**SECURITIES & EXCHANGE COMMISSION, Plaintiff,**

v.

**REPUBLIC NATIONAL LIFE INSURANCE CO. et al., Defendants.**

**No. 74 Civ. 1097 (MP).**

United States District Court,
S. D. New York.

July 11, 1974.

Theodore Altman, Gary N. Sundick, John S. Stoppelman, and Frederick L. White, Washington, D. C., for Securities & Exchange Commission.

Kaye, Scholer, Fierman, Hays & Handler, New York City, for Republic National Life Ins. Co., by Sheldon Oliensis and Milton Sherman, New York City.

Cahill, Gordon & Reindel, New York City, for Peat, Marwick, Mitchell & Co., by William E. Hegarty, Mathias E. Mone and Michael P. Tierney, New York City.

Arnold & Porter, Washington, D. C. for Westheimer, Fine, Berger & Co., by Daniel A. Rezneck and Robert D. Rosenbaum, Washington, D. C.

Tenzer, Greenblatt, Fallon & Kaplan, New York City, for Hilary H. Evers, by Edward L. Sadowsky and Richard Kaye, New York City.

John L. Hill, Atty. Gen. of Texas, amicus curiae, by John W. Odam, Jr., Austin, Tex.

POLLACK, District Judge.

### Decision*

In the past few weeks the court has spent an enormous amount of time going through the very complete submissions by all parties to the applications before the court and has made what it considers to be a thorough examination of the applicable law. Accordingly, the court is prepared to render the following decision.

The SEC initiated this matter in a private investigation ordered on Novem-

* No reflection on the merits of this case is intended or made by this opinion.

ber 15, 1972, by an order entitled "In the matter of Realty Equities Corporation of New York." The complaint in this suit, essentially an enforcement proceeding, was filed on March 8, 1974. In its prayer for relief the plaintiff requests that the court issue a preliminary injunction as well as an order appointing a receiver to take control of all the books, records, assets and business of defendant Republic National Life Insurance Company ("Republic") and to conduct its affairs until further order of this court.

The SEC has now moved for preliminary injunctions against all defendants and an appointment of a receiver of Republic. Certain of the defendants have either consented to or are in the process of consenting to final injunctions satisfactory to the Commission. The preliminary injunctions requested seek to prevent the remaining defendants from engaging in further violations of Section 10(b) of the Exchange Act [15 U.S.C. 78j(b)] and Rule 10b–5 thereunder [17 CFR 240.10b–5] by employing any manipulative or deceptive device, scheme or artifice to defraud; by making untrue statements of material fact or omitting to state material facts necessary to make statements made not misleading; and by engaging in any transaction, practice or course of business which operates or would operate as a fraud or deceit upon any person. The application further seeks to enjoin the defendants Republic, Westheimer, Fine, Berger & Co., and seven of Republic's officers, four of whom are former directors, from violating or aiding violations of Section 13(a) of the Exchange Act of 1934 [15 U.S.C. 78m] and the rules promulgated thereunder by filing annual, periodic and other reports with the SEC containing untrue statements of material facts or omitting to state material facts necessary to make statements made not misleading.

In addition to the foregoing relief, the application requests on order appointing a receiver to take control of all the books, records, assets and business of defendant Republic and to conduct its affairs until further order of this court and empowering and directing the receiver to conduct investigations, oversee an independent accounting into the financial and other affairs of Republic, to report his findings to the court and to take appropriate action based thereon.

The defendant Republic and its seven officer defendants oppose the grant of an injunction and of a receiver and have made a cross motion to dismiss the complaint under Rules 12(b)(1) and 12(b)(7) or in the alternative to transfer this suit pursuant to 28 U.S.C. 1404(a) to the Northern District of Texas. PMM (Peat, Marwick, Mitchell & Co.), an accounting firm, opposes the grant of an injunction against that firm. WFB (Westheimer, Fine, Berger & Co.), an accounting firm, opposes the grant of an injunction against them and cross moves to dismiss the complaint under Rule 12(b)(6) or in the alternative to require the plaintiff to replead Counts V and VI with particularity to conform with the requirements of Rule 9(b) of the Federal Rules of Civil Procedure.

The SEC opposes the several cross motions to dismiss the complaint or to restate the fraud claims with particularity and opposes a transfer of the suit to Texas.

The application for provisional remedies was not served until some three months after the inception of this suit, that is, on June 3, 1974. No application was made for a temporary restraining order. The application before the court consists of the SEC's notice of motion and a covering affidavit to which are annexed 65 exhibits and 3 volumes containing 23 depositions, totaling some 1,-800 pages of transcripts. This material was gleaned from the private investigation mentioned above. Defendants correctly point out that these exhibits and depositions contain a melange of sharply contradictory documentation and testimony on virtually every substantive issue herein.

However, that serious violation of federal securities law occurred does not seem to be strongly denied; responsibility for such violations is denied by the opposing parties.

Republic is a life insurance company duly organized and existing under Chapter 3 of the *Texas Insurance Code*, V.A. T.S. Republic's principal place of business is in Dallas, Texas. Pursuant to Texas law, Republic is subject to plenary regulation, and is regulated, by the Commissioner of Insurance of the State of Texas. It is claimed to have total life insurance in force well in excess of ten billion dollars and total assets of nearly half a billion dollars. Its total stockholders' equity at the end of 1973 is said to have been in excess of $30,000,000 under "statutory accounting" applicable to insurance companies, and $75,000,000 under the more commonly applied standard of "generally accepted accounting principles."

Republic is authorized to do business and is doing business in 49 states of the United States, the District of Columbia and Puerto Rico, and the single state in which it is not authorized to do business and does no business, is the State of New York. Its stockholders number in excess of 22,500, of whom 21 per cent reside in the State of Texas, and well over half of whom reside in the south, the southwest, and the far west.

The seven individual defendants in this action who are sued here as officers of Republic are all residents of Dallas, Texas.

Republic's records relating to the subject matter of this action are maintained in Republic's home office in Dallas. The affidavit on behalf of the defendants states that they comprise approximately 96,000 pages of documents. Defendants say that a substantial portion of such documents are required by Republic for its current use and any production of such documents outside Dallas would impose a severe and continuing burden upon Republic; that such records are being regularly consulted by seven Examiners of the Commissioner of Insurance of the State of Texas, as well as by the Supervisor and Deputy Supervisor designated by him; and that duplication of this great mass of documents would in itself impede the investigation now being conducted by the Texas, Oklahoma, Indiana and Montana authorities representing insurance departments of those states.

On February 27, 1974—the SEC suit was filed on March 8, 1974—the Texas Commissioner of Insurance issued an order placing Republic in a state of supervision pursuant to Texas Insurance Code art. 21.28–A. The supervision procedure (which is administratively initiated) was created by the Texas Legislature in 1967 as a threshold remedy which would be more effective in resolving the less serious cases of insolvency than receivership (which is judicially initiated). The legislature concluded that receivership was too drastic a remedy for many cases and often caused more harm than good.

The Commissioner's order prohibited, except with his approval, Republic from *inter alia* encumbering specified assets; investing its funds except by depositing funds received in the bank accounts of the company established at date of the order, in government bonds, and in certificates of deposit in state or federal banking institutions; incurring any debt or obligation for the acquisition of any investments other than the above; or altering the insurance operations in violation of the Insurance Code. In accordance with the purpose of supervision, the order did not restrain Republic from conducting the ordinary business of insurance. Republic was also required to schedule its investments and value of property secured by lien, required to correctly reflect the values of its investments, to present a proper financial statement, and to prepare plans to dispose, upgrade or correct deficiencies of any investments.

Later official orders issued by the Texas Commissioner include the direction to the officers of Republic to notify

the Commission of the fullest cooperation of the company and its personnel with the investigation and evaluation of the company's financial and investment affairs by the Commissioner's Examiners and by the Supervisors, and the direction that Republic's officers and members of its board shall take appropriate action to assert any appropriate claim or demand on behalf of the company to recover any company assets wrongfully used, taken or wasted, which may have been misappropriated in breach of any duty owed to the company by any person.

On February 28, 1974, the Commissioner appointed a Supervisor who was directed to assume joint control with Republic of all records concerning Republic's investments. On April 29, 1974, an additional Supervisor was appointed whose primary duties were to retain special counsel (since selected) and to investigate with the special counsel Republic's potential causes of action for breach of fiduciary duty as well as any actions others might have against Republic for breach of duty.

On April 29, 1974, the Commissioner continued the state of supervision after a public hearing at which Republic showed the extent of compliance with the original order. During the period of supervision Republic's directors approved new investment procedures, the president resigned effective June 30th, and seven of the twelve directors resigned, including six of the eight members of the finance and investment committee. The directors who resigned were replaced by local commercial and investment bankers and lawyers, each of whom received the prior approval of the Commissioner.

The SEC has persuasively indicated, at least for present purposes, that in essence this case presents an outrageous example of massive and serious violations of the securities laws by Realty Equities and by Republic involving numerous sham transactions designed to artificially inflate the reported income and assets of Realty and of Republic and also permitting the rakeoff by Realty for no real consideration of many millions of dollars of Republic's funds. The SEC argues that the significant facts asserted in the complaint have not been denied. As previously stated, the opposing parties on this application deny that the charges pertain to them. The SEC contends that in November, 1970, Arthur Anderson would not certify Republic's 1970 financial statements unless full disclosure was made of Republic's investment in Realty Equities and affiliates and unless other conditions were met. The SEC says that Republic's response was to terminate Arthur Anderson & Co. as its auditor. Republic's 1970 financial statements were not certified by an outside accounting firm but were signed by defendant Stanley, Republic's actuary.

Several months later, Republic engaged PMM as its auditors and PMM has since certified Republic's financials for 1970, 1971 and 1972, each time allegedly without insisting on any disclosure of Republic's investment in, and involvement with, Realty Equities. The Commission charges that PMM was well aware that Arthur Anderson & Co. had been terminated because it had insisted on such disclosure.

Realty Equities also went through changes of its accountants in part of the time period involved herein. WFB has supplied affidavits showing that in early February, 1972, Realty Equities requested that WFB accept the engagement as its independent auditors.

As of that time Realty Equities had not yet filed its annual report on Form 10–K with the SEC for its fiscal year ended March 31, 1972. WFB was requested to audit Realty Equities' financial statements both for that fiscal year and for its fiscal year ending March 31, 1972. WFB thereafter issued qualified opinions with regard to Realty's financial statements for its fiscal years ended March 31, 1971, and 1972. Previously, Realty Equities had retained the accounting firm of Fred Landau & Co., but the engagement of that firm had

been terminated allegedly because of their inability to complete their audit on the fiscal 1971 financial statements. They were followed by David Berdon & Co. who apparently commenced an audit involving the affairs of Realty Equities and encountered during their audit the transactions with Republic. Berdon requested the principal officer of Realty Equities, defendant Karp, to make arrangements for Berdon to audit the books and records of Republic. Their engagement was shortly terminated by Karp allegedly because of their inability to advise him when they might be able to complete the audit, already long overdue, even if he were able to make such arrangements.

Republic and its former directors, defendants herein, contend that the McCarran-Ferguson Act deprives this court of subject matter jurisdiction and that the SEC complaint should accordingly be dismissed. The McCarran-Ferguson Act, (referred to as "MFA") provides in relevant part that:

"No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance . . . unless such Act specifically relates to the business of insurance. . . ." 15 U.S.C. Section 1012(b).

■ The MFA was passed by Congress in response to the Supreme Court decision in United States v. South-Eastern Underwriters Association, 322 U.S. 533, 64 S.Ct. 1162, 88 L.Ed. 1440 (1944), which held that the issuance of insurance policies was a transaction in commerce and thus subject to federal regulation. The purpose of the MFA was not to extend state power but merely to reaffirm the long standing tradition of state regulation of insurance. Moreover, state laws of general applicability which only incidentally regulate insurance companies are not protected by the MFA. Hamilton Life Insurance Company of New York v. Republic National Life Insurance Co., 408 F.2d 606 (2d Cir.

1969) (applicability of the Federal Arbitration Act to reinsurance agreement).

The Supreme Court recently held that the MFA's protection does not extend to state regulation of all aspects of insurance company activities, but only to the "business of insurance". The "business of insurance" was in turn limited to the insurer-policyholder relationship. SEC v. National Securities, Inc., 393 U.S. 453, 458–460, 89 S.Ct. 564, 21 L.Ed.2d 668 (1969). In National Securities, the court held that state regulation of the insurer-shareholder relationship is not within the regulation of the business of insurance and that the SEC action was therefore not barred from the outset by the MFA.

In National Securities, the State Insurance Commissioner had approved a merger after considering the interests of both policyholders and shareholders, while the SEC sought to undo the merger because material representations in shareholder communications were involved.

The court concluded that the MFA did not bar the federal remedy even though it affected a matter subject to state regulation, since impairment was only indirect. "In these circumstances, there is no reason to emasculate the securities laws by forbidding remedies which might prove to be essential." 393 U.S. at 463, 89 S.Ct. at 570.

■ In the present case, the Texas administrative proceedings dealing with Republic's investment problems would appear to be sufficiently related to Republic's status as a reliable insurer to come within the MFA's protection. The question thus becomes the extent to which the suit invalidates, impairs or supersedes the Texas regulatory process.

■ National Securities indicates that the MFA is to be narrowly construed in the face of valid federal regulatory interests: accommodation of federal and state regulatory interests is to be sought.

■ Judged by this standard, it does not appear that there is justification for

dismissing the present complaint as a whole, nor for denying the SEC motion for injunctive relief sought against future violations on the ground of the applicability of MFA.

■ However, appointment of a federal receiver for Republic may involve action to "impair or supersede" the Texas regulatory procedure, particularly with respect to ordering the receiver to conduct Republic's business—something which Texas has declined to do. As in *National Securities*, the remedy sought here by the SEC "does not affect a matter predominantly of concern to policyholders alone." It could be thus argued that federal receivership would merely supplement state supervision. However, federal supplementation was held to be barred by the MFA in Federal Trade Commission v. National Casualty Company, 357 U.S. 560, 564, 78 S.Ct. 1260, 2 L.Ed.2d 1540 (1958) (deceptive insurance advertising), and such argument may tend to overlook the clear expression of the Texas Legislature's dissatisfaction with receivership as an extremely harsh remedy.

The SEC argues that while supervision under Texas law is adequate to protect the policyholders' interests, it is inadequate to protect the shareholders' interests. Along the lines of this suggestion, inquiry into the adequacy of the applicable state procedures has been denied short of an allegation that the state procedures are mere pretense. Ohio AFL–CIO v. Insurance Rating Board, 451 F.2d 1178, 1184 (6th Cir. 1971), cert. denied, 409 U.S. 917, 93 S.Ct. 215, 34 L.Ed.2d 180 (1972); see Federal Trade Commission v. National Casualty Co., 357 U.S. 560, 564, 78 S.Ct. 1260, 2 L.Ed.2d 1540 (1958). However, this line of cases has only involved situations where the interests to be protected by federal and state law were essentially the same.

In summary, the MFA does not require the dismissal of the SEC complaint, nor does it prohibit preliminary or final injunctive relief concerning the Exchange Act violations. However, the MFA at least seems to severely restrict the conditions under which a federal receiver may be appointed, if not to prohibit such an appointment outright.

The SEC urges that it is essential that a receiver be appointed to conduct Republic's affairs or at least to oust wrongdoers who remain on as officers of Republic. The SEC argues that a provisional caretaker type of receiver is necessary to oust incumbent management and to oversee the correction of Republic's filings with the Commission which are alleged to be false, fraudulent and misleading.

■ The authority to appoint a receiver exists in the court in an action instituted by the SEC assuming the need exists for such exercise of ancillary power. 28 U.S.C., Section 959(b) defines the substantive rights, duties and liabilities of a federal equity court receiver as follows:

"A trustee, receiver or manager appointed in any cause pending in any court of the United States, including a debtor in possession, shall manage and operate the property in his possession as trustee, receiver or manager according to the requirements of the valid laws of the State in which such property is situated, in the same manner that the owner and possessor thereof would be bound to do if in possession thereof."

Rule 66, Federal Rules of Civil Procedure, provides that the practice and the administration of estates by receivers shall continue to be that heretofore followed by federal equity courts.

■ Receivership may interfere seriously with a defendant's property rights by ousting it from control and even possession. The party seeking a receivership must show that it has some legally recognized right in that property that amounts to more than a mere claim against the defendant involved.

■■ The Commission has no substantive right, legal or equitable in or to

the property of Republic National Life Insurance Co.—nor is there any demonstrated need to have Republic's property preserved from dissipation. There is here demonstrated no present or future danger of or any actually threatened diversion or loss of assets through future gross fraud and mismanagement of Republic's officers. There is no factual basis for assuming that the Texas supervision is sham or inadequate. And no such contention is made by the SEC. The appointment of a receiver in equity is not a substantive right but is a remedy that is ancillary to the primary relief prayed for in the suit—it does not have a direct effect on the final outcome of the suit. The appointment of a receiver *pendente lite* lies in the discretion of the court and the applicant bears a heavy burden to establish an actual need therefor.

■■■ The appointment of a receiver *pendente lite* with the attendant burdensome expense and dislocation of a corporation's operations and particularly the operations of a business of life insurance, is an extraordinary remedy to be employed with the utmost caution and granted only on a showing of clear necessity to protect plaintiff's interest in Republic's property which the SEC seeks to have placed under a euphemistically styled "caretaker" until such time as Republic can comply with the filing requirements of the law.

To warrant such extraordinary relief there must be imminent danger of the loss of the property and of failure to meet obligations due to Republic's shareholders and investors and the public generally. The supervision by the Texas authorities that now pervades the affairs of Republic strongly negates any such reasonable likelihood and the evidence before the court fails to demonstrate any imminent danger of loss of the property of Republic or that federal custody of Republic's property is needed to insure correction of its filings with the SEC and proper conduct of its financial investments and accounts in compliance with the law.

The motion of the plaintiffs for the appointment of a receiver at this time is accordingly denied.

■■■ The Court has been told that the Texas administrative supervision eliminated the need for promptly requesting a temporary restraining order. There is insufficient evidence from which to anticipate that the acts and transactions complained of herein can be or will be committed in the future by the accounting firms PMM and WFB. The former certified Republic's 1973 financial statement and SEC has conceded in open court that it takes no exception thereto. WFB no longer serves Realty Equities as its accountants.

There is no evidence of past conduct similar to that complained of herein which the SEC criticizes, on the part of either accounting firm, on behalf of anyone other than Republic or Realty. Indeed in the case of WFB the Commission staff is quoted as not questioning the good faith of their acts in respect of Realty Equities. Moreover, there is no evidence of imminent cognizable danger from any further improper acts of the said accounting firms violative of the securities laws or of irreparable harm to the public interest and to the interests of Republic and its stockholders or of Realty Equities if the accountants are not enjoined (albeit that the Commission need only establish what the statute requires without reference to proof of irreparable injury as in the usual suit for injunction).

The Court finds as to PMM and WFB that there is no demonstrated propensity or natural inclination on their part to violate the securities laws nor is there sufficient evidence of a reasonable likelihood that the wrongs asserted herein will be repeated. (No opinion is expressed on the merits of the charges).

And balancing the equities, they weigh decidedly in favor of PMM and WFB and against the grant of a provi-

sional remedy as to them. In reaching this conclusion to deny an injunction the court has applied the standards of the public interest, not the requirements of private litigation.

As to the other defendants who have not consented to an injunction heretofore, the same finding cannot be made on papers alone. As to them, however, no urgent need for temporary injunctive relief can be spelled out of the pace in which this application was presented to the court. Doubt is thus cast on whether there is a factual basis on which to find any reasonable likelihood or imminent danger of future violations or that the wrongs charged will be repeated.

Put another way, there is no reliable showing of a propensity for violation of the law or that in the Supervisor setup that Republic will not correct is filings with the SEC and avoid any acts which might be deemed violations of federal securities laws.

At all events, this question should not be resolved as to such other defendants without an evidentiary hearing in respect of Republic, its officer-defendants, the appraiser-defendant and the appraiser-finder defendant.

A hearing will be set focusing on this question in respect to the defendants mentioned. The date for the hearing will be discussed with counsel.

WFB has made a motion under Rule 9(b) in respect of Counts V and VI of the complaint. The underlying fraud asserted by the complaint against Realty Equities has been used to draw in WFB, a firm of accountants who undertook an audit of that company's accounts seemingly after most of the fraud had been perpetrated.

This is an enforcement proceeding by the SEC seeking equitable or prophylactic relief. However, Counts V and VI against the accountants, who are sued as secondary participants, do not rely on a negligence standard—they are posited on fraud charges.

 It has recently been held that in securities enforcement proceedings

the public trust demands more of *legal* advisors than "customary" activities which prove to be careless. Whether this demanding standard is to be expanded to accountants who rely on generally accepted principles of accounting and are named as peripheral defendants as aiders and abettors of fraud is an open question that need not be decided on this application. The standard of culpability appropriate for the author of accounting reports in an action by the SEC for injunctive relief must depend on the facts and circumstances of each case to be established on the trial and should not be resolved on applications for temporary provisional relief in advance of trial. See SEC v. Spectrum, Limited, 489 F.2d 535, 542 (2d Cir. 1973).

The complaint against these accountants fails to allege the charges with that particularity of ultimate fact that appears in the staff's opposing brief. No explanation appears for the hiatus except to say that the notice thereof in the complaint is deemed by the plaintiff to be a sufficient pleading.

Repetition *in haec verba* of the federal statute or the Commission's Rule 10(b)(5) in conclusory language is hardly to be equated with allegations in the particularity mandated by Federal Rule 9(b). There is no suggestion that the staff labors under any disadvantage of ignorance of the facts. Indeed it has told the Multi-District Panel that it needs no discovery. Fair disclosure of the charges pertinent to the particular defendant when fraud is asserted is a salutary standard for public agencies to adhere to as well as private litigants. No prejudice can result to plaintiff from being precise, open and frank. This is especially applicable in view of the meetings and interchange between the accounting and other staff of the Commission with WFB preceding and after acceptance by the latter in 1972 of the engagement to audit the affairs of Realty Equities. Concededly their opinions were expressly qualified. The Commission's accounting staff has not disputed

or denied the averments of fact concerning the meetings, discussions and transactions between WFB and the staff.

The undenied allegation in the moving affidavit of WFB states:

"WFB came to the SEC staff in advance, discussed the transactions in question, described the nature of the proposed accounting treatment and asked the SEC staff whether there was any reason it should not undertake the engagement or treat the matter differently. The SEC staff raised no objection."

The moving affidavit further says that the SEC expressly stated to the moving defendants that there was no question about their good faith in the conduct of their professional activities.

 Under these circumstances it appears appropriate to require that Counts V and VI of the complaint should be repleaded to conform with the requirements of Rule 9(b) Federal Rules of Civil Procedure. This will not necessitate recopying the balance of the complaint. Since an accountant is not a guarantor of the reports he prepares and is only duty bound to act honestly, in good faith and with reasonable care in the discharge of his professional obligations, the elements of fraud if charged must be pleaded with particularity to show a fraudulent breach of duty. Counts V and VI are to be repleaded accordingly within 20 days hereof.

The motion of WFB under Rule 12(b)(6) is denied.

 Republic and the seven officer defendants seek a dismissal of the suit on the ground of failure to join the Texas Insurance Commissioner and his appointed supervisors who are claimed to be "indispensable" parties hereto. The thrust of this argument is that this suit cannot be adjudicated without the Texas officials. Even if the defendants were correct in their application of the prerequisites to this case, the proper course would be to order that the Texas officials be joined. However, in the absence of the appointment of a federal receiver, which has been denied herein, there is no requirement for the presence of the Texas officials in this suit. The motion under Rules 12(b)(7) and 19 of the Federal Rules of Civil Procedure is denied.

In the alternative, Republic and the individual officer defendants, move pursuant to 28 U.S.C. Section 1404(a) that this suit be transferred to the Northern District of Texas (where it might originally have been brought).

There is substantial *prima facie* indication that Texas may be a more suitable venue for the adjudication of the issues in respect to Republic and its officers. Much will depend on the progress in this case of the pre-trial proceedings.

The motion to transfer will be denied, without prejudice, however, to a renewal prior to the trial of this suit for good cause shown. The problem of transfer may also be involved in the forthcoming ruling of the Multi-District Panel where a similar application was argued on June 24, 1974. At all events, this court leaves the matter entirely open for renewed consideration in the light of developments in the case.

In order to expedite the pre-trial preparation of the issues for trial, the court directs that documentary disclosure as demanded by the defendants on letter requests be complied with within ten days of receipt. Disputes are to be discussed by the parties and referred to the court promptly on oral appointment for resolution.

Following the documentary discovery sought by the defendants, if any, depositions may be taken by the defendants upon similar informal notice in order to shorten any time lag by following the regular course.

No interrogatories are to be served until after the foregoing types of discovery are completed and then after good cause and necessity therefor be shown to the court on oral application.

No suggestion of discovery on behalf of the SEC is made since it has advised

the Multi-District Panel and the advice is reflected in the papers before this court that it does not need discovery.

By October 1, 1974, the plaintiff shall serve proposed findings of fact setting forth only ultimate facts without evidentiary detail. Responsive thereto the parties are to meet to agree upon those proposed findings which are not reasonably controvertible and thereafter the defendants are to serve their counter proposed findings and follow generally the trial preparation procedure which has been outlined by this Court in the New York Law Journal of March 28, 1974, in respect to agreed and disputed proposed findings of fact and conclusions of law.

The foregoing shall constitute the findings of fact and conclusions of law required by Rule 52(a) of the Federal Rules of Civil Procedure.

So ordered.