**SECURITIES AND EXCHANGE COMMISSION, Plaintiff-Appellant,**

v.

**ARTHUR YOUNG & COMPANY, Douglas F. Page, Kenneth L. Kost, Thomas W. Orr and George Steven Burrill, Defendants-Appellees.**

No. 77-1768.

United States Court of Appeals, Ninth Circuit.

Feb. 1, 1979.

786

Paul Gonson, SEC (argued), Washington, D.C., Harvey L. Pitt, Atty., Washington, D.C., for plaintiff-appellant.

M. Laurence Popofsky (argued), San Francisco, Cal., for defendants-appellees.

Before CHOY and SNEED, Circuit Judges, and WATERS,* District Judge.

SNEED, Circuit Judge:

This case grew out of the activities of Jack Burke, an oil and gas venture promoter, during 1964–71. In the course of these activities the appellee Arthur Young and Company (AY) performed certain audits and prepared certain financial statements in connection with some of Burke's ventures. In 1973, the Securities and Exchange Commission (SEC) brought a civil action against Burke and many of his associates charging violations of the antifraud and reporting requirements of the securities laws. The SEC joined other defendants, including the appellee and four of its auditors, charging violations of the securities acts by participating with and aiding and abetting the violations by Burke. Specifically, violations of Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a), Section 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j(b) and Rule 10b–5 thereunder, 17 C.F.R. 240.10b–5, and Sections 13(a) and 15(d) of the Securities Exchange Act, 15 U.S.C. §§ 78m(a) and 78o(d) were charged.

After a thorough trial before an experienced trial judge AY and its auditors were found neither to have violated, nor to have aided and abetted the violations of, the securities laws. The trial court prepared extensive findings and conclusions of law which are printed at 426 F.Supp. 715 (N.D. Cal.1976) and which contain a complete statement of the SEC's charges and the facts that led to this appeal. The trial court also refused to enjoin AY and its auditors from future violations because "the evidence is insufficient to show a reasonable likelihood or expectation that AY would commit further violations in the future." 426 F.Supp. at 731. The SEC ap-

*Hon. Laughlin E. Waters, United States District Judge for the Central District of California, sitting by designation.

pealed and, because the only sanction sought to be imposed upon AY and its auditors was an injunction preventing future violations, we affirm on the ground that the trial court did not exceed the limits of its discretion in refusing to enjoin AY and its auditors.

## I.

### Standard of Review of Trial Court's Denial of an Injunction.

 It is uniformly held that "the granting or denying of injunctive relief rests within the sound discretion of the trial court and . . . will not be disturbed unless there has been a clear abuse of it." *SEC v. MacElvain*, 417 F.2d 1134, 1137 (5th Cir. 1969), *cert. denied*, 397 U.S. 972, 90 S.Ct. 1087, 25 L.Ed.2d 265 (1970). As this court has recognized, even after a showing of a past violation of the securities laws, no *per se* rule requires that an injunction issue. *SEC v. Koracorp Industries*, 575 F.2d 692, 701 (9th Cir.), *cert. denied*, —— U.S. ——, 99 S.Ct. 348, 58 L.Ed.2d 343 (1978). *See SEC v. Bausch & Lomb, Inc.*, 565 F.2d 8, 18 (2d Cir. 1977); *SEC v. Management Dynamics, Inc.*, 515 F.2d 801, 807 (2d Cir. 1975). To succeed in its attack on the district court's exercise of discretion, the SEC must establish that there was no reasonable basis for the district judge's decision. *United States v. W. T. Grant Co.*, 345 U.S. 629, 634, 73 S.Ct. 894, 97 L.Ed. 1303 (1953); *SEC v. Bausch & Lomb, Inc., supra*, 565 F.2d at 18.

## II.

### Standard of Performance Required of Auditors.

Our affirmance rests on our conviction that under the circumstances of this case the trial court did not err as a matter of law in fixing the standards of performance imposed on auditors by the securities laws. Like the trial court, we will assume, without deciding, that in a statutory enforcement proceeding such as this, negligence, rather than scienter, constitutes the standard by which an accountant's or auditor's performance must be measured. That is, we assume, without deciding, that *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976) does not require the finding of scienter in a statutory enforcement proceeding. By eliminating any significance in the distinction between scienter and negligence from that which we must review, we are only required to determine whether the trial court misconceived the standard applicable to accountants and auditors against which the existence of negligence is determined. That is, the question is did the trial court impose an insufficiently demanding standard with which accountants must comply to avoid liability under the securities laws. We hold that it did not.

We confess at the outset that our review is hampered by the fact that neither the trial court nor the parties have been pellucid in presentation of their view of what constitutes the appropriate standard. The SEC in the trial court appears to have asserted that AY and its auditors performed their work "with blinders on" and that they should have done "more" to reveal to investors the conduct of Burke and his associates that increased the financial risk of those who invested in his ventures.[1] During oral argument the SEC appeared to take the position that the proper standard is whether the accountant performed his audit functions in a manner that would have revealed to an ordinary prudent investor, who exam-

---

1. Uncertainty as to what exactly the SEC contended caused the trial judge to characterize the SEC position as that AY should have done something "more" than it did. 426 F.Supp. at 759. In its brief, the SEC never clearly articulated a standard more stringent than Generally Accepted Auditing Standards (GAAS). "[B]y failing to conduct its audit in accordance with generally accepted auditing standards, AY deprived itself of any chance to discover the fraud . . . . ." The one concrete aspect in which the SEC asserts AY's audit was deficient was in not examining more closely the account balance and assets of Fundamental, the corporation through which the funds of all Burke oil and gas programs were channeled. The district court, however, found that GAAS required no more than AY had done. For the reasons set out in this opinion, we find that no more was required.

ined the accountant's audits or other financial statements, a reasonably accurate reflection of the financial risks such an investor presently bears or might bear in the future if he invested in the audited endeavor.

■ AY, on the other hand, contends that good faith compliance with Generally Accepted Auditing Standards (GAAS) [2] under the circumstances of this case will immunize it from liability under the securities laws. The trial court did not explicitly choose between these competing standards; but a careful reading of its findings of fact and conclusions of law convinces us that it did not accept that urged by the SEC during oral argument. Its failure to do so, we hold, did not constitute error.

To accept the SEC's position would go far toward making the accountant both an insurer of his client's honesty and an enforcement arm of the SEC. We can understand why the SEC wishes to so conscript accountants. Its frequently late arrival on the scene of fraud and violations of securities laws almost always suggests that had it been there earlier *with the accountant* it would have caught the scent of wrong-doing and, after an unrelenting hunt, bagged the game. What it cannot do, the thought goes, the accountant can and should. The difficulty with this is that Congress has not enacted the conscription bill that the SEC seeks to have us fashion and fix as an interpretive gloss on existing securities laws.[3]

■ Under existing law we agree with Judge Pollack when, in *SEC v. Republic National Life Ins. Co.*, 378 F.Supp. 430, 440 (S.D.N.Y.1974), he observed:

> Since an accountant is not a guarantor of the reports he prepares and is only duty bound to act honestly, in good faith and with reasonable care in the discharge of his professional obligations, the elements of fraud if charged must be pleaded with particularity to show a fraudulent breach of duty.

On the facts of this case, AY discharged its professional obligations by complying with GAAS in good faith. The trial court's findings, which are not clearly erroneous, establish beyond dispute that AY and its auditors conformed to this standard.

Moreover, it is clear that the trial court found no basis for the application of *United States v. Simon*, 425 F.2d 796 (2d Cir. 1969), *cert. denied*, 397 U.S. 1006, 90 S.Ct. 1235, 25 L.Ed.2d 420 (1970). *Simon* recognized that compliance with Generally Accepted

---

**2.** "Auditing" is the process whereby the independent Certified Public Accountant conducts an examination of management's financial statements to determine whether the statements present fairly the financial information which they purport to convey. "Generally Accepted Auditing Standards" (GAAS) are general standards of conduct relating to the auditor's professional qualities as well as to the judgments exercised by him in the performance of his examination and issuance of his report. AICPA, Professional Standards, *Statements on Auditing Standards* No. 1, § 150.01.

**3.** As far back as 1964, the SEC was aware of the divergence of methods used to account for oil and gas operations and was concerned with protecting investors in these enterprises. Working both with the Accounting Principles Board of the Association of Independent Certified Public Accountants, and its successor, the Financial Accounting Standards Board, the SEC has sought to remedy this problem. In accordance with the directive of the Managers on the Part of the House in their statement appended to the Report of the Conference Committee on the Investment Company Amendments Act of 1970 (P.L. 91–547, approved December 14, 1970), the SEC drafted proposed legislation, the Oil and Gas Investment Act of 1972, and submitted it to Congress June 14, 1972. This legislation would have regulated oil and gas programs to prevent the type of fraud Burke was able to practice in this case.

Although Congress failed to enact the proposed legislation, the SEC has continued its efforts to gain tighter control over oil and gas programs. Recently, under its rule-making authority, the SEC issued three releases entitled, "Requirements for Financial Accounting and Reporting Practices for Oil and Gas Producing Activities," "Oil and Gas Producers-Full Cost Accounting Practices," and "Disclosure of Oil and Gas Reserves and Operations; Amendments to Regulation S–K." Releases Nos. 33–6006, 33–6007 and 33–6008 (43 Fed.Reg. 60404, 60413, 60418) (1978). Many of the substantive concerns the SEC has expressed in this case may have been at least partially removed through its own more explicit requirements.

Accounting Principles (GAAP)[4] would not immunize an accountant when he consciously chose not to disclose on a financial statement a known material fact. No such deliberate concealment was found by the trial court to exist in this case. Thus, although we assume *arguendo* that *Simon* strips the accountant of the protection that compliance with GAAS (*Simon*, incidentally, was concerned only with GAAP) normally affords when he fails to reveal material facts which he knows or which, but for a deliberate refusal to become informed, he should have known, there exists no basis in the trial court's findings for so applying *Simon*. We cannot say such findings in this respect are clearly erroneous.

### III.

### *Application of Standards.*

■ Having concluded that the trial court did not fall into error when it refused to apply the SEC's standard by which an accountant's compliance with the securities laws is to be determined and that the trial court's relevant findings of fact are not clearly erroneous, it follows that the trial court did not exceed the limits of its discretion in refusing to enjoin the AY defendants. Under such circumstances the decision that there was no reasonable likelihood that the wrong would be repeated is unassailable on appeal. *Cf. SEC v. Koracorp Industries, Inc.*, 575 F.2d 692 (9th Cir.), *cert. denied*, —— U.S. ——, 99 S.Ct. 348, 58 L.Ed.2d 343 (1978) (no abuse of discretion in denying injunction against accounting firm that failed to uncover fraud through simple negligence). We would uphold the trial court's exercise of discretion in this case even if it were true that the trial court erred in one or more respects when it concluded under the standard of care it employed that the AY defendants had violated no securities law. However, we make no finding that the AY defendants have violat-

ed any securities law; we merely hold that the trial court in no respect employed an improper legal standard, that the application of *Simon* was not warranted by the facts of this case, and that the refusal to enjoin the AY defendants was within the limits of the trial court's discretion.

AFFIRMED.

---

4. "Generally Accepted Accounting Principles" (GAAP) establish guidelines relating to the process by which the transactions and events of a business entity are measured, recorded, and classified in accordance with a convention-

al format. GAAS thus differs from GAAP; the former involves how an auditor goes about obtaining information, while the latter involves the format in which to present the information.