The PEOPLE OF the STATE OF NEW YORK, by Dennis C. VACCO, Attorney General, and the People of the State of North Carolina, by Michael F. Easley, Attorney General, Plaintiffs,

v.

FINANCIAL SERVICES NETWORK, USA, d/b/a Resource Card Services, Financial Services Capital Group, Paul Navestad a/k/a Paul R. Navestad, Eric Navestad and Vincent Joseph Sansalone, Individually and as Officers of the above corporations, Defendants.

No. 96–CV–6257T.

United States District Court, W.D. New York.

June 27, 1996.

Philip Lehman, North Carolina Department of Justice, Raleigh, NC, Marilyn Pina O'Mara, New York State Department of Law, Binghamton, NY, for People of the State of New York, People of the State of North Carolina.

Frank A. Aloi, Rochester, NY, Sheldon Lustigman, Andrew Lustigman, New York City, for Financial Services Network, USA, Paul Navestad, Eric Navestad.

DECISION AND ORDER

TELESCA, District Judge.

### INTRODUCTION

The States of New York and North Carolina commenced this action pursuant to 15 U.S.C. § 6101 *et seq.* seeking both restitution and a preliminary injunction claiming that defendants engage in deceptive, fraudulent and illegal practices by their promotion of advance fee credit services and debt consolidation services in violation of the Federal Trade Commission's Telemarketing Sales Rule, 16 C.F.R. Part 310, New York Executive Law § 63(12), New York General Business Law §§ 349 and 350, New York General Business Law Art. 28–B, New York General Obligations Law § 5–531, North Carolina General Statute §§ 66–106 *et seq.*, North Carolina General Statute § 1–424 and North Carolina General Statute § 75–1.1. Plaintiffs moved *ex parte* for a temporary restraining order and for an order to show cause for a

preliminary injunction and the appointment of a receiver.

This Court granted a temporary restraining order ("TRO") pending a hearing on plaintiffs' request for a preliminary injunction. The TRO (1) prohibited defendants from violating 16 C.F.R. §§ 310.4(a)(4), 310.3(a)(1), 310.3(a)(2) and 310.3(a)(4), New York General Business Law §§ 349, 350 and 456, New York Executive Law § 63(12), North Carolina General Statutes §§ 14–424 and 75–1.1 and North Carolina Loan Broker Act, N.C.G.S. § 66–106 et seq.; (2) froze defendants' assets; and (3) directed defendants to allow plaintiffs access to defendants' business premises, to provide plaintiffs with a completed financial statement, and to identify all bank accounts.

Defendants Financial Services Network, USA, d/b/a Resource Card Services ("FSN"), Paul Navestad, a/k/a Paul R. Navestad and Eric Navestad have been served and have submitted papers in opposition to the request for a preliminary injunction. Defendants Financial Services Capital Group ("FSCG") and Vincent Joseph Sansalone ("Sansalone") have not been served. On June 25, 1996, this Court heard oral argument on the motion. Sheldon Lustigman, Esq. appeared in opposition on behalf of FSN, Paul Navestad and Eric Navestad and Marilyn O'Mara, Esq., Assistant Attorney General for the State of New York and Philip Lehman, Esq., Assistant Attorney General for the State of North Carolina, appeared on behalf of plaintiffs.

In support of their motion for a preliminary injunction, plaintiffs submitted (1) an affidavit from an investigator with the Federal Trade Commission together with exhibits which are copies of FSN advertisements and a transcript of the recording consumers hear upon calling FSN's "800" telephone number; (2) affidavits from investigators with the New York and North Carolina State Attorney General's Offices with attached copies of telephone records from FSN; (3) 27 affidavits or declarations from dissatisfied customers of FSN with accompanying copies of FSN advertisements; and (4) affidavits testifying to the existence of letters of complaint or inquiry from more than half of the states of the United States and administrative Cease and Desist Orders issued against FSN in the states of Idaho, Nevada, Indiana and North Dakota. In opposition to the motion, defendants have submitted affidavits from defense counsel and defendant Paul Navestad with attached exhibits which include: (1) a copy of a letter with enclosed FSN promotional materials which FSN sent to the New York Banking Department which sought an opinion regarding whether FSN's investment program required licensing by the New York state; (2) letter from the New York State Banking Department responding to FSN's letter; (3) letters written by FSN in response to complaints raised by various states; (4) declarations or affidavits and accompanying documentation from four satisfied FSN customers along with nine letters from satisfied customers; (5) documentation evidencing resolution of complaints from FSN customers and refunds to FSN dissatisfied customers; and (6) cease and desist letter from FSN to defendant Sansalone.

Having considered the evidence and arguments of counsel, and for the reasons that follow, plaintiffs' order to show cause for a preliminary injunction is granted in part and denied in part and plaintiffs' motion for the appointment of a receiver is denied at this time.

*BACKGROUND*

Plaintiffs allege that since 1988, defendants have engaged in the business of telemarketing advance fee credit services to consumers throughout the United States. Specifically, they claim that defendants mailed advertisements to consumers representing that they can provide a pre-approved $30,000 line of credit and debt consolidation services for an advance fee, when, in fact, consumers receive nothing more than a packet of information consisting of consumer forms, booklets and pamphlets on business financing, obtaining credit and earning investment income.

Defendants' direct mailings to consumers which advertise FSN's services consists of the following:

IMMEDIATE ACTION REQUIRED
CONGRATULATIONS!  YOU ARE APPROVED FOR
FINANCIAL SERVICES NETWORK'S RESOURCE CARD
PRE–APPROVED
$30,000 CREDIT LINE

(Complaint Ex. B)

CONGRATULATIONS!  YOU ARE APPROVED FOR
FINANCIAL SERVICES NETWORK'S RESOURCE CARD
PRE–APPROVED
$30,000.00 CREDIT LINE
ANNUAL FEE: $48.00

(Complaint Ex. C)

**URGENT**

| | | | |
|---|---|---|---|
| Card Provider: | Financial Services Network | Annual Fee: | $48 |
| Telephone Number: | 1–800–210–4323 | | |
| Account Type: | Resource Card | | |
| Member Status: | Pending | | |
| Account Status: | Pre–Approved | | |
| Credit Line Amount: | $30,000.00 | Approval Expires: | 03/21/96 |

(Plaintiffs' Supplemental Authority in Further Support of Motion for Preliminary Injunction, Exhibit D)

Defendants' mailings encourage consumers to call a toll-free "800" number for further information.  Plaintiffs allege that when a consumer calls, they hear a pre-recorded message which represents that defendants can provide various benefits including a line of credit, debt consolidation, business financing and collateralized credit cards.  An investigator for plaintiffs called the telephone number and recorded the message, portions of which states as follows:

The Resource Card features a $30,000 line of credit for investments.  You can use your resource card to make big money by making investments that you find with our money.

As a Resource Card Member, you can take advantage of our debt consolidation service.  By next week, all your bills can be combined into one convenient monthly payment.

(Transcript of Recorded Message attached as Exhibit A to O'Mara Affidavit) Before providing any services to consumers, defendants collect payment of an amount varying from $48 to $78, which is paid for either by credit card, check or money order.  Although the pre-recorded message is not programmed to allow consumers to contact a live representative from FSN, it is programmed to allow the consumer to accept the Resource Card at any time during the message by pressing "1" for c.o.d. or "2" for activation by credit card.

Plaintiffs allege that defendants' mailings and telephone recordings are misleading by representing that all consumers are guaranteed to receive the offered line of credit, debt consolidation or credit card for an upfront fee and that in the event consumers do not receive the promised extension of credit, they will receive a refund of the fee paid to defendants.  Finally, plaintiffs allege that defendants fail to disclose that the $30,000 line of credit is limited to mortgage investments made by defendants based on information supplied by the consumer.  In support of their allegations, plaintiffs submit more than 27 affidavits from consumers who responded to defendants' solicitations hoping to obtain an extension of credit as advertised but instead were denied credit and/or denied refunds.

Defendants contend that the business they conduct is not in violation of any state licensing laws and that the advertisements and telephone messages fairly and adequately represent the services offered by FSN.  Defendants claim that FSN is a "membership organization" which provides consumers with various services, including investment oppor-

tunity information, debt consolidation information, applications for secured credit cards and business planning advice. FSN claims that it has not issued any loans or credit cards to consumers and denies that it has provided budget planning or debt adjustment services to the public.

Defendants explain that the "$30,000 credit" offered in the FSN promotions is a sum offered to members who find mortgages to be purchased by FSN which meet certain investment criteria. In order to obtain this line of credit, a member must contact FSN with an opportunity to buy a mortgage note and if FSN deems the investment favorable, it will supply the capital to purchase the mortgage note, sell the note to an institutional investor for a higher amount and share the profit (finders fee) equally with the member. Defendants claim that this investment program was submitted to both the New York and North Carolina banking departments for review and both found that a license is not required by the Banking Departments nor would FSN be required to register as a mortgage banker or broker.

Defendants also explain that FSN does not itself provide any services to directly adjust members debts or to make payments on behalf of members to their creditors. Rather, FSN directs consumers to companies and attorneys who accept applications for that service. Similarly, FSN does not issue MasterCards, Visas or any other credit card. Rather, FSN has agreements with two banking institutions which are willing to offer collateralized credit cards to persons with poor credit histories. FSN provides its members with applications for credit cards which consumers send directly to the issuing financial institution. FSN also provides information and applications for consumers to obtain loans but does not itself issue direct loans.

Plaintiffs allege that defendants have violated both the Telemarketing Sales Rule ("FTC Telemarketing Rule"), 16 C.F.R. Part 310 which was promulgated pursuant to the Telemarketing and Consumer Fraud and Abuse Prevention Act ("Telemarketing Act", 15 U.S.C. §§ 6101 *et seq.*) as well as numerous New York and North Carolina state statutes.

## DISCUSSION

A preliminary injunction is warranted if the movant demonstrates irreparable injury and either (1) a likelihood of success on the merits or (2) serious questions going to the merits so as to make them fair grounds for litigation *plus* (3) a balance of hardships tipping sharply in the movant's favor. *Hasbro, Inc. v. Lanard Toys, Ltd.*, 858 F.2d 70, 73 (2d Cir.1988). Preliminary injunctions are authorized under the Telemarketing Act "upon a proper showing that, weighing the equities and considering the Commission's likelihood of ultimate success, such action would be in the public interest." 15 U.S.C. § 53(b). I find that plaintiffs have met their burden of showing a likelihood of success on the merits on the claims that defendants have violated Section 310.3(a)(1)(ii) of the FTC Telemarketing Rule, 16 C.F.R. § 310.3(a)(1)(ii), Section 310.4(a)(4) of the FTC Telemarketing Rule, 16 C.F.R. § 310.4(a)(4) and Section 310.3(a)(4) of the FTC Telemarketing Rule, 16 C.F.R. § 310.3(a)(4).

### A. *False and Misleading Advertisement*

The complaint alleges that defendants violated Section 310.3(a)(1)(ii) and 310.3(a)(2) of the FTC Telemarketing Rule, 16 C.F.R. §§ 310.3(a)(1)(ii) and 310.3(a)(2) by failing to disclose in a clear and conspicuous manner prior to a consumer paying money, that there are material limitations on the consumer's use of the Resource Card to obtain a loan or credit and Section 310.3(a)(4) of the FTC Telemarketing Rule, 16 C.F.R. § 310.3(a)(4), by not providing the offered loan and debt consolidation services, business financing and credit card to consumers as advertised. The relevant provisions of the FTC Telemarketing Rule provide in pertinent part:

(a) Prohibited deceptive telemarketing acts or practices. It is a deceptive telemarketing act or practice and a violation of this Rule for any seller or telemarketer to engage in the following conduct:

(1) Before a customer pays for goods or services offered, failing to disclose in a clear and conspicuous manner, the following material information:

(ii) All material restrictions, limitations, or conditions to purchase, receive or use the goods or services that are the subject of the sales offer.

(2) Misrepresenting, directly or by implication, any of the following material information:

(ii) Any material restriction, limitation, or condition to purchase, receive, or use goods or services that are the subject of a sales offer;

(iii) Any material aspect of the performance, efficacy, nature or central characteristics of goods or services that are the subject of a sales offer;

(4) Making a false or misleading statement to induce any person to pay for goods or services.

*Id.* (footnote omitted).

Defendants contend that their written advertisements sent as direct mailings to consumers accurately and fairly depicts its services. For example, they emphasize that the advertisements contain the explanatory language "THE RESOURCE CARD FEATURES A $30,000 LINE OF CREDIT FOR INVESTMENTS ..." or

"Imagine this—Next week you can start your own business. We have approved you for a credit line to purchase investments that you find in your neighborhood. You don't need to use any of your own funds because *we give you 100% of the funds* necessary to make the investments ..."

Defendants argue that this language fairly and adequately informs the consumer that the line of credit is not a guaranteed loan without limitation but is an amount of money that FSN will make available to the member for the purchase of a specific type of investment, i.e., private mortgage purchases, described in the membership information.

Defendants further rely on the explanatory information contained in the membership materials which is provided to consumers only upon enrollment as members of FSN and after payment of the annual fee. Defendants readily admit that the only type of transaction for which the $30,000 line of credit is available is the investment arrangement whereby the Resource Card member finds a mortgage for FSN to purchase at a discount rate for which the Card member shares in any profit in resale.

Defendants claim that the only debt consolidation service they offer to consumers is providing an application for debt consolidation with one of several debt consolidation companies or attorneys. Yet the advertisement clearly states that "(a)s a Resource Card member you can take advantage of our debt consolidation service. By next week all your bills can be combined into one convenient monthly payment".

Defendants also view the language of their advertisements which states "... you can get your own collateralized MasterCard or Visa even if you have poor credit" as a fair portrayal of their service since members are furnished *applications* to apply for a credit with certain banking institutions.

B. *Advance Payment for Arranging Credit or Loan*

Section 310.4(a)(4) of the FTC Telemarketing Rule, 16 C.F.R. § 310.4(a)(4) provides in pertinent part:

(a) Abusive conduct generally. It is an abusive telemarketing act or practice and a violation of this Rule for any seller or telemarketer to engage in the following conduct:

(4) Requesting or receiving payment of any fee or consideration in advance of obtaining a loan or other extension of credit when the seller or telemarketer has guaranteed or represented a high likelihood of success in obtaining or arranging a loan or other extension of credit for a person.

Defendants argue that they have not violated this provision because they do not obtain loans or issue credit directly to its customers. However, defendants admit that FSN accepts a fee from its customers to become "members". They also admit that FSN arranges for its members to obtain a loan or extension of credit. Further, FSNs' advertisements clearly represent a high like-

lihood of success in obtaining or arranging for credit by stating that a consumer is "pre-approved" for an extension of credit and that by "next week" they can have all their debts consolidated into one payment. By defendants' own admissions together with evidence presented, the plaintiffs have demonstrated a likelihood of success of this claim on the merits.

## FINDINGS AND CONCLUSIONS

■ I find that defendants' advertising practice is patently misleading and deceptive. Defendants not only make representations that they offer "a line of credit" and "debt consolidation" services but they pitch their services in the form of the "Resource Card" which is "pre-approved" and has a "line of credit". The advertisements are clearly designed to foster the appearance that FSN is offering a credit card with related services commonly offered by credit card companies to consumers with questionable credit rating. Only after paying the up-front fee will consumers learn that the Resource Card is not a credit card and that the line of credit they thought they would obtain is actually an investment offer of a finders fee for locating prospective mortgage holders interested in selling a mortgage debt to FSN at a discount. In fact, consumers paying FSN the fee to obtain the Resource Card will only receive applications for a credit card and for debt consolidation services with other institutions. The reality of what a consumer receives as a Resource Card member is a far cry from the benefits offered in defendants' advertising.

■ This Court finds that defendants' have violated the Telemarketing Act (1) by failing to disclose in a clear and conspicuous manner prior to a consumer paying money, that there are material limitations on the consumer's use of the Resource Card to obtain a loan or credit; (2) by requesting and receiving payment of a fee in advance of arranging a loan or credit when they have guaranteed a likelihood of success in obtaining the loan or other extension or credit for a consumer; and (3) by not providing the offered loan and debt consolidation services,

business financing and credit card to consumers as advertised.

■ I find that the plaintiffs have demonstrated that they are likely to succeed on the merits of their claim. I also find that the plaintiffs have made a proper showing that, after weighing the equities and considering the plaintiffs' likelihood of ultimate success, the issuance of a preliminary injunction is in the public interest. Accordingly, plaintiffs' motion for a preliminary injunction is granted.

## APPOINTMENT OF A RECEIVER

■ Plaintiffs also move for the appointment of a receiver. In support of their application, they submit a letter from Paul Navestad, President of FSN, to the Better Business Bureau dated June 17, 1996 which explains that the employees of FSN are forming a *new* company to service Resource Card members and market the memberships (but *without* requiring any upfront fee as previously required). Plaintiffs claim that this proposed activity violates several provisions of this Court's TRO which restrains FSN and its officer defendants from, *inter alia*, continuing the prohibited practice of misrepresenting to consumers that they will be granted a line of credit when in fact they will be offered an opportunity to locate mortgage opportunities and share a finders fee with the defendants. Further, plaintiffs claim that defendants Paul and Eric Navestad attempted to transfer $300,000 from an FSN marketing company bank account in violation of Paragraph II of the TRO which clearly restrains defendants from transferring withdrawing or disposing of any funds controlled by defendants or corporate entity related to FSN. Plaintiffs argue that these violations of the TRO require the appointment of a receiver for the purpose of protecting and conserving defendants' assets and deter further violations.

■ The appointment of a receiver "is an extraordinary remedy to be employed with the utmost caution". *U.S. v. Ianniello*, 824 F.2d 203, 207 (2d Cir.1987), citing, *S.E.C. v. Republic National Life Ins. Co.*, 378 F.Supp. 430, 438 (S.D.N.Y.1974). Plaintiffs must make a clear showing that appointment

is necessary to prevent irreparable injury. *Spira v. Nick*, 876 F.Supp. 553 (S.D.N.Y. 1995). Factors courts consider in determining appropriateness of appointment of receiver includes fraudulent conduct on part of defendant, imminent danger that property will be lost or squandered, inadequacy of available legal remedies, probability that harm to plaintiff by denial of appointment would be greater than injury to parties opposing appointment, plaintiff's probable success in action and possibility of irreparable injury to his interests in property and whether interests of plaintiff and others sought to be protected will in fact be well served by receivership. *Consolidated Rail Corp. v. Fore River Ry.*, 861 F.2d 322 (1st Cir.1988).

Plaintiffs' motion for a receiver is denied. Defendants indicate that they have willingly refunded fees to dissatisfied customers in the past. In support of this claim, defendants produced an extensive list of those to whom refunds were made totalling over $500,000 during January 1995 until May 1996. Based on defendants' own records (which support their claim that $500,000 has been refunded to dissatisfied customers in the past 18 months), it is reasonably foreseeable that potentially at least an additional $500,000.00 in refund requests from FSN customers may be needed in the months ahead pendente lite. Accordingly, to ensure that funds are available to satisfy requests for future refunds and as an alternative to the appointment of a receiver, defendants are ordered to post a $500,000.00 payment bond, or deposit $500,-000.00 in an escrow fund with the Court or to submit a $500,000.00 letter of credit to the Clerk of the Court to establish a fund upon which the State of New York can draw to reimburse any dissatisfied customers of FSN if FSN fails to do so.

## CONCLUSION

IT IS ORDERED that defendants Financial Services Network, USA d/b/a Resource Card Services, Paul Navestad and Eric Navestad, each of them and their successors, assigns, officers, agents, servants, and employees and those persons in active concert or participation with them whether acting directly or through any corporation, subsidiary, division or other device, are preliminarily enjoined from violating Sections 310.3(a)(1), 310.3(a)(2), 310.3(a)(4) and 310.4(a)(4) of the Rule, 16 C.F.R. §§ 310.3(a)(1), 310.3(a)(2), 310.4(a)(4) and 310.4(a)(4). Specifically,

IT IS FURTHER ORDERED, that defendants shall cease and desist from:

A. representing a high likelihood of success in obtaining or arranging a loan or other extension of credit in payment of an up-front fee by using such language as "pre-approved" or "approved" for a card, loan or extension of credit or making other assurances that a consumer "can get" their own credit card.

B. failing to disclose, in a clear and conspicuous manner, all material restrictions, limitations, or conditions to receive or use a loan or other extension of credit; and

C. misrepresenting, directly or by implication, any of the following material information:

1. any material restriction, limitation, or condition to receive or use a loan or other extension of credit;

2. any material aspect of the performance, efficacy, nature, or central characteristics of a loan or other extension of credit; and

D. making false or misleading statements to induce any person to pay for any advance fee credit services.

IT IS FURTHER ORDERED, that defendants shall submit to the Attorney General's Office of the State of New York for plaintiffs' prior approval all written advertisements and transcripts of telephone recordings which defendants intend to use to present their services to the public, and

IT IS FURTHER ORDERED, to insure that funds are available to satisfy requests for future refunds from dissatisfied consumers and as an alternative to the appointment of a receiver, defendants are ordered to post a $500,000.00 payment bond, or deposit $500,-000.00 in an escrow fund with the Court or submit a $500,000.00 letter of credit, approved by the Court, to be filed with the Clerk of the Court to insure that funds are available to reimburse dissatisfied customers

of FSN if FSN fails to do so. The asset freeze previously imposed in the TRO shall remain in effect until proof of compliance with this requirement is provided to the Court within ten days of the date of this Order and upon notice to the Attorney General of the State of New York, and

IT IS FURTHER ORDERED, that defendants are preliminarily enjoined from:

A. Destroying, erasing, mutilating, concealing, altering, transferring, or otherwise disposing of, in any manner, directly or indirectly, any contracts, accounting data, correspondence, advertisements, computer tapes, discs, or other computerized records, books, written or printed records, handwritten notes, telephone logs, telephone scripts, receipt books, written or printed records, handwritten notes, telephone logs, telephone scripts, receipt books, ledgers, personal and business canceled checks and check registers, bank statements, appointment books and other documents or records of any kind which relate to their business practices or business or personal finances from December 31, 1992 to the present time.

IT IS FURTHER ORDERED, that defendants shall continue to allow plaintiffs' representatives, agents and assistants immediate access to defendants' business premises, including but not limited to: 110 West Water Street, Elmira, New York. The purpose of this access shall be to inspect and copy any materials relevant to this action.

IT IS FURTHER ORDERED, that defendants shall issue refunds to any dissatisfied FSN customer seeking a refund; and

IT IS FURTHER ORDERED, that defendants shall immediately provide a copy of this Order to each affiliate, subsidiary, division, sales entity, successor, assign, officer, director, employee, independent contractor, agent, attorney, and representative and shall, within sixty (60) days after the date of service of this Order, file with plaintiffs, a report in writing setting forth in detail the manner and form in which they have complied with this Order.

ALL OF THE ABOVE IS SO ORDERED.