NEW YORK LIFE INS. CO., Plaintiff,

v.

WATT WEST INVESTMENT CORP., et al., Defendants.

No. Civ. S–90–1423–DFL.

United States District Court, E.D. California, Sacramento Division.

Jan. 8, 1991.

---

Erica B. Grubb and Frank A. McGuire, Morrison & Foerster, Walnut Creek, Cal., for plaintiff.

Paul Stewart and Gayle J. Gribble, Flynn & Stewart, San Francisco, Cal., for defendant William H. Cook.

L. Kent Wyatt, Weintraub, Genshlea, Hardy, Erich & Brown, Sacramento, Cal., for defendant Ertle.

## MEMORANDUM OPINION

LEVI, District Judge.

This matter was heard on November 21, 1990, on plaintiff's application for appoint-

ment of a temporary receiver. Erica Grubb, Esq., appeared on behalf of New York Life Insurance Co. ("New York Life"). Despite notification by plaintiff, no appearance was entered on behalf of any defendant. For the reasons discussed below, the court approved plaintiff's application for appointment of a temporary receiver.[1]

## I. FACTS

### A. The Loan Documents

On April 6, 1988, defendant Watt West Investment Corp. ("Watt West") executed a promissory note borrowing $7.5 million from plaintiff New York Life, secured by a commercial real estate property. Watt West executed a deed of trust, naming plaintiff New York Life as beneficiary. Watt West simultaneously executed an assignment of rents agreement conveying a present, unconditional, absolute assignment of rents and income to New York Life. Also on April 6, 1988, Watt West executed a financing statement to perfect New York Life's security interest in personal property granted under the deed of trust. On April 11, 1988, the deed of trust, the assignment of rents agreement, and the financing statement were recorded in Sacramento County. These instruments are referred to collectively as the "loan documents."

The deed of trust provides that New York Life is entitled to foreclose on the property in the event Watt West defaults, and defines the events constituting default. Deed of trust, Art. III, paragraphs 4.01(A) and 3.01(1)–(8) respectively. The deed of trust also provides that upon Watt West's default New York Life is entitled to appointment of a receiver. Deed of trust, paragraph 4.01(E).[2]

---

1. On November 21, 1990, the court entered an order appointing a temporary receiver in this case. This memorandum opinion reduces to writing the reasons supporting that order.

2. Paragraph 4.01(E) of the deed of trust provides in pertinent part:

Beneficiary [New York Life] shall be entitled to the appointment of a receiver as a matter of right without notice and without the necessity of proving either the inadequacy of the security or the insolvency of Trustor or any other person who may be legally or equitable [sic] liable to pay money secured by this Deed of Trust....

## B. The Alleged Defaults

On October 10, 1990, and November 13, 1990, Watt West allegedly failed to make monthly mortgage payments of $63,065.00 to New York Life. Watt West also allegedly failed to pay late charges arising from these delinquent payments as of the date plaintiff filed this action. New York Life further contends that Watt West is diverting rents and other income from the property to pay unrelated obligations in violation of the loan documents.[3] On both November 12, 1990, and November 14, 1990, New York Life gave written notice of Watt West's alleged default under the loan documents. New York Life then exercised its option to accelerate, declaring the outstanding principal and interest immediately due.

## II. PROCEDURAL HISTORY

On November 16, 1990, New York Life filed a complaint for breach of the loan agreements, together with an ex parte application for appointment of a temporary receiver. The court denied plaintiff's ex parte application on November 16, 1990, ordering plaintiff to serve its pleadings on all defendants. The court ordered defendants to file opposing papers by 1:00 p.m. on November 20, 1990, and set the matter for hearing on November 21, 1990. Defendants failed to oppose the application for appointment of a temporary receiver and failed to appear at the hearing on November 21, 1990. The court is satisfied, based on the declarations and representations of plaintiff's counsel, that all reasonable efforts were made to provide defendants with notice of these proceedings. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332. Venue is proper pursuant to 28 U.S.C. § 1391(a).

## III. DISCUSSION

### A. Federal Law Governs Appointment of Receivership

This court must first determine whether federal or state law applies to plaintiff's application in this diversity action. Plaintiff New York Life argues that the California law of receiverships applies to this petition,[4] by operation of Fed.R.Civ.P. 64 and 66.

Rule 66, Fed.R.Civ.P., governing appointment of receivers, provides that:

The practice in the administration of estates by receivers or by other similar officers appointed by the court shall be in accordance with the practice heretofore followed in the courts of the United States or as provided in rules promulgated by the district courts. In all other respects the action in which the appointment of a receiver is sought or which is brought by or against a receiver is governed by these rules.

Plaintiff interprets the last sentence of the Rule as a cross reference to Fed.R.Civ.P. 64 which addresses the seizure of property for the purpose of satisfying a judgment to be entered. Rule 64 in turn sends the court to state law: "all remedies providing for seizure of ... property [to secure satisfaction of a prospective judgment] are available under the circumstances and in the manner provided by [state law]," subject to two qualifications which are not relevant here. Thus, plaintiff concludes that the court should apply California law governing the appointment of receiverships. *See* Cal.Code Civ.Proc. § 564.

■ Although plaintiff's position is certainly reasonable, Rule 66 is subject to a different interpretation. The language of

---

3. The deed of trust provides in pertinent part that:

Trustor ... shall not use such rents, income or profits for purposes unrelated to the Secured Property unless and until all current payments on the indebtedness secured hereby, Impositions, and such costs and expenses, have been paid or provided for and adequate cash reserves have been set aside to ensure the timely payment of all Impositions and such costs and expenses.

Deed of trust, paragraph 1.08(E).

4. California Code Civ.Proc. § 564(2) provides that a receiver may be appointed:

[i]n an action by a mortgagee for the foreclosure of the mortgage and sale of the mortgaged property, where it appears that the mortgaged property is in danger of being lost, removed, or materially injured, or that the condition of the mortgage has not been performed, and that the property is probably insufficient to discharge the mortgage debt.

Rule 66 may be read to assert the primacy of federal law and federal practice in the appointment of receivers. Indeed, it appears to the court that this is the most natural reading of the Rule. The Rule states that the *practice* in the administration of estates by receivers—and the term "practice" surely includes the appointment of the receiver—shall be governed by *federal* precedent or *federal* district court local rules. It is because of this very language that plaintiff came to federal court seeking appointment of a temporary receiver under authority of the Local Rules of this court. Local Rule 232 governs receiverships and provides for temporary appointment of receivers.[5] The temporary receivership which plaintiff seeks is a creation of Local Rule 232(b) rather than the state law of receiverships. Plaintiff's position thus appears somewhat inconsistent: it seeks application of the local rules which create the device of a temporary receivership but then asserts that state law standards control as to the appointment of that temporary receiver.

The intent of Rule 66 to apply federal law to the appointment of a receiver also may be gathered from the note of the advisory committee. The note states that the final sentence of the Rule was added in 1948 to assure "the application of the federal rules to all matters except actual administration of the receivership estate itself." Fed.R.Civ.P. 66 Advisory Committee's Note. Read literally, this language is not technically inconsistent with plaintiff's position that Rule 64, and then state law, applies to the appointment of a receiver.

But the intention of the drafters appears to have been to assure application of federal standards and procedure to the appointment of receiverships by federal courts.

Because a federal court's appointment of a receiver is an equitable act,[6] the court's conclusion that federal law controls this matter is further supported by—or at least is consistent with—the principle, stated by the Supreme Court in *Guaranty Trust Co. of New York v. York*, 326 U.S. 99, 109, 65 S.Ct. 1464, 1470, 89 L.Ed. 2079 (1945), that the federal court's equity power in diversity cases is not simply equated with state law under the *Erie* doctrine.[7] In *York* the court stated that the *Erie* doctrine did "not mean that whatever equitable remedy is available in a State court must be available in a diversity suit in a federal court, or conversely, that a federal court may not afford an equitable remedy not available in a State court." *York*, 326 U.S. at 105, 65 S.Ct. at 1468. The Ninth Circuit has reiterated the vitality of the federal court's independent and inherent equitable power and jurisdiction in *FTC v. H.N. Singer, Inc.*, 668 F.2d 1107, 1112 (9th Cir.1982) (Duniway, J.). In *Singer* the court held that the district court had the equitable power to freeze assets even though conditions for an attachment of assets under Fed.R.Civ.P. 64 and state law were not met. *See also Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 674, 70 S.Ct. 876, 880, 94 L.Ed. 1194 (1950) (in a diversity case, the fact that "the declaratory remedy which may be given by the federal courts may not be available in the State courts is

---

**5.** A temporary receivership is defined by Local Rule 232, which provides in part that the term "'temporary receiver' shall mean a receiver appointed without notice or on less than the notice provided in LR 230 to the party sought to be subjected to the receivership." The device of a temporary receivership is not mentioned in either the Federal Rules of Civil Procedure or the California law of receiverships.

**6.** *See View Crest Garden Apartments, Inc. v. United States*, 281 F.2d 844, 849 (9th Cir.1960) ("receivership is an equitable remedy"); *Pittsburgh Equitable Meter Co. v. Paul C. Loeber & Co.*, 160 F.2d 721 (7th Cir.1947) (appointment of a receiver in a judgment creditors' suit is a branch of equity jurisdiction not dependent on

statute, and is a right based on the ground that equity will come to the aid of any one who has exhausted his or her remedies at law). *See, e.g., Gordon v. Washington*, 295 U.S. 30, 55 S.Ct. 584, 79 L.Ed. 1282 (1935) (ordinarily, a federal court will not exercise its equity jurisdiction to appoint a receiver where the court is not asked to make any further disposition of the property); *Securities and Exchange Commission v. Republic Nat. Life Ins. Co.*, 378 F.Supp. 430 (S.D.N.Y. 1974) (appointment of receiver in equity is not a substantive right, but is a remedy that is ancillary to the primary relief prayed for in a suit).

**7.** *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

immaterial"); *Pusey & Jones Co. v. Hanssen,* 261 U.S. 491, 497, 43 S.Ct. 454, 455, 67 L.Ed. 763 (1923) ("That a remedial right to proceed in a federal court sitting in equity cannot be enlarged by a state statute is likewise clear. The federal court may therefore be obliged to deny an equitable remedy which the plaintiff might have secured in state court") (citations omitted); *Irving Trust Co. v. Braswell,* 596 F.Supp. 1441, 1444 (S.D.N.Y.1984) (federal courts may issue a preliminary injunction in a diversity contract action even if state court could not do so under state law).

Moreover, the application of federal law to the appointment of a receiver in a diversity case is consistent with the *Erie* doctrine because the appointment of a receiver does not directly affect the outcome of the action. *See Pusey & Jones Co.,* 261 U.S. at 497, 43 S.Ct. at 455 ("the appointment of a receiver is merely an ancillary and incidental remedy. A receivership is not final relief. The appointment determines no substantive right, nor is it a step in the determination of such a right."); *Securities and Exchange Commission v. Republic Nat. Life Ins. Co.,* 378 F.Supp. 430 (S.D.N.Y.1974) (appointment of receiver in equity is not a substantive right, but is a remedy that is ancillary to the primary relief prayed for in a suit). Thus the appointment of a receiver is procedural rather than substantive in the sense that courts use those terms in an *Erie* analysis. *See,*

*e.g., Erie,* 304 U.S. 64, 58 S.Ct. 817; *York,* 326 U.S. 99, 65 S.Ct. 1464.

The existing case law on this question tends to support the court's view. *See, e.g., Kelleam v. Maryland Casualty Co.,* 312 U.S. 377, 380, 61 S.Ct. 595, 597, 85 L.Ed. 899 (1941) (Federal court sitting in diversity has authority to appoint receiver based on federal equitable principles); *Britton v. Green,* 325 F.2d 377, 382 (10th Cir.1963) (federal court sitting in diversity "should not appoint a receiver [under certain circumstances] ... even though a State court, exercising concurrent jurisdiction, may have appropriately appointed a Receiver in the same circumstances") (citation omitted); *Mintzer v. Arthur L. Wright Co.,* 263 F.2d 823, 826 (3rd Cir. 1959) (federal court sitting in diversity is "not bound by state law in determining whether an equitable remedy [such as appointment of a receiver] is to be given") (Goodrich, J., concurring, joined by Kalodner, J.); *Haase v. Chapman,* 308 F.Supp. 399, 406 (W.D.Mo.1969) (quoting *Britton,* 325 F.2d at 382); *Campbell v. Pennsylvania Indus., Inc.,* 99 F.Supp. 199, 204 (D.Del.1951) (In appointing a receiver "the federal court looks to federal law ... to determine the principles which are to be applied").[8] This is also the view stated by Professors Wright and Miller. *See* 12 C. Wright & A. Miller, *Federal Practice & Procedure: Civil,* § 2983 at 28–30 (1973) ("Whether a federal court should appoint a receiver in a diversity action appears to be

---

8. *See also Gordon v. Washington,* 295 U.S. 30, 37, 55 S.Ct. 584, 588, 79 L.Ed. 1282 (1935) (federal court sitting in diversity has equitable power to "appoint a receiver of mortgaged property to protect and conserve it"); *Burnrite Coal Briquette Co. v. Riggs,* 274 U.S. 208, 212, 47 S.Ct. 578, 579, 71 L.Ed. 1002 (1927) (federal court sitting in diversity "may, under its general equity powers independently of any state statute, entertain a bill ... for the appointment of at least a temporary receiver"); *Pusey & Jones Co. v. Hanssen,* 261 U.S. 491, 498, 43 S.Ct. 454, 456, 67 L.Ed. 763 (1923) (a state cannot enlarge the remedial right to proceed in a federal court sitting in diversity and, therefore, federal courts may "be obliged to deny an equitable remedy which the plaintiff might have secured in a state court"). *But see Cowin v. Bresler,* 741 F.2d 410, 417 n. 8 (D.C.Cir.1984) (dicta questioning the district court's ruling that "a federal court pos-

sesses the inherent power to apply federal law when it is requested to appoint a receiver ... to liquidate a solvent corporation") (citation omitted); *Ashley v. Keith Oil Co.,* 73 F.Supp. 37, 55 (D.Mass.1947) (federal court sitting in diversity refers to state law to determine whether a stockholder or creditor of a corporation has a substantive right to have a receiver appointed). *Ashley's* conclusion rests on its analysis of a footnote in *York,* 326 U.S. at 105 n. 3, 65 S.Ct. at 1468 n. 3, interpreting *Pusey & Jones Co.,* 261 U.S. 491, 43 S.Ct. 454. That footnote addresses the nature of the plaintiff's underlying right to relief at state law which would, under federal equity practice, entitle the plaintiff to appointment of a receiver. The footnote does not argue or suggest that federal standards for appointment of a receiver are inapplicable to diversity cases.

a question properly determined on the basis of federal law").

The court notes that in *Prudential Insurance Company of America v. Fifty Associates*, 503 F.2d 925, 930 (9th Cir.1974), the Ninth Circuit looked to state law for the appointment of a receiver. It appears from the *Prudential Insurance* opinion, however, that neither the parties nor the court considered the question of whether to apply federal or state law. Because *Prudential Insurance* does not address the question, the court does not consider it to be binding authority. *See, e.g., Estate of Bishop v. Bechtel Power Corp.*, 905 F.2d 1272, 1275–76 (9th Cir.1990) (court not bound by prior cases in which question was assumed without decision).

■ To some extent the question of which law applies may be an academic concern given the similarity of California and federal standards. The one difference of significance might be that California law waives the necessity of showing that the property is insufficient to secure the loan where, as here, the deed of trust explicitly provides for a receiver. The court does not find a similar principle in federal law, although surely the fact that the parties agreed to the appointment of a receiver in the deed of trust is entitled to great weight as the court exercises its discretion. Also, the state standard permits plaintiff to show *either* injury to the property *or* failure to perform on the mortgage. The federal standard is not so sharply stated.

### B. Federal Analysis: Appointment of a Receiver

■ Federal courts contemplating the appointment of a receiver properly consider a number of factors. Most important among the factors are the adequacy of the security and the financial position of the mortgagor. In *View Crest Garden Apartments v. United States*, 281 F.2d 844 (9th Cir.1960), the Ninth Circuit held that a receiver could be appointed to collect rents pending foreclosure when the district court was satisfied that the security was inadequate or its adequacy was substantially doubtful and that the mortgagor was insolvent or of doubtful financial standing. In addition, as Professors Wright and Miller note, in appointing receivers federal courts consider:

(1) fraudulent conduct on defendant's part;

(2) imminent danger of the property being lost, concealed, injured, diminished in value, or squandered;

(3) inadequacy of legal remedies;

(4) probability that harm to plaintiff by denial of appointment would outweigh injury to parties opposing appointment;

(5) plaintiff's probable success in the action and the possibility of irreparable injury to plaintiff's interest in the property;

(6) whether plaintiff's interests sought to be protected will in fact be well-served by receivership.

*See* 12 C. Wright & A. Miller, *Federal Practice & Procedure: Civil*, § 2983 at 22–24 (1973), and cases cited therein; *e.g., Consolidated Rail Corp. v. Fore River Railway Co.*, 861 F.2d 322 (1st Cir.1988); *Mintzer v. Arthur L. Wright & Co.*, 263 F.2d 823, 825 (3rd Cir.1959).

■ Plaintiff's factual recitation, as set forth under penalty of perjury in the declaration of Elizabeth J. Kaercher and the declarations and representations of counsel, remain uncontroverted. The court therefore accepts these assertions for purposes of this application. Applying the relevant considerations to the facts of this case, the court finds that appointment of a receiver is appropriate.

Plaintiff has made a sufficient showing that the adequacy of the security is substantially doubtful and that the financial strength of the defendants is at least doubtful. The court notes particularly paragraph eight of the Kaercher declaration regarding the statement of Clark Wynn, Chief Financial Officer of the Cook Company, that the Cook Company is experiencing financial difficulty. In addition, plaintiff has shown that the value of the property is approximately $910,000.00 less than the debt owed to New York Life. Declaration of Elizabeth J. Kaercher, paragraph 14.

The court finds there is imminent danger that the property may be diminished in

value. Plaintiff has demonstrated that rents are currently being diverted from the repayment of plaintiff's loan. Plaintiff has also shown that the property is not being properly administered, resulting in the likely departure of a major tenant. If the vacant property is not leased to a new tenant, potentially requiring extensive retrofitting, it appears certain that the property's value will be diminished.

The court further finds that the balance of hardships and probability of success on the merits weighs heavily in plaintiff's favor. The deed of trust specifically provides for the appointment of a temporary receiver in circumstances such as now exist. There is little hardship in enforcing the terms of the parties' bargain. Moreover, at this stage of the case, plaintiff's probability of success on the merits of the underlying contract action appears quite high. This is a straightforward foreclosure action on secured property.

## IV. CONCLUSION

For the foregoing reasons, the court concludes that the appointment of a temporary receiver is appropriate under applicable federal law.[9]

9. The court notes that even were it to apply state law, the outcome would be the same. The state standard is set out in Cal.Code Civ.Proc. § 564(2). There are three factors: (1) injury to the property; or (2) a condition of the mortgage has not been performed; and (3) the property is insufficient to discharge the debt. The Kaercher declaration alleges that defendants are not performing on the terms of the mortgage inasmuch as they have already missed two monthly payments and have diverted rents to other expenses. The other two factors have already been addressed above at § III(B).