BRILL & HARRINGTON
INVESTMENTS, et
al., Plaintiffs,

v.

VERNON SAVINGS AND LOAN
ASSOCIATION, et al.,
Defendants.

The FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for Vernon Savings and Loan Association, F.S.A., Counterclaim–Plaintiff,

v.

BRILL & HARRINGTON INVEST-MENTS, et al., Counterclaim–Defendants.

Civ. A. No. 91–2454.

United States District Court,
District of Columbia.

March 5, 1992.

Duane K. Thompson, Warren L. Dennis, Proskauer, Rose, Goetz & Mendelsohn, Washington, D.C., for plaintiffs.

William R. Stein, Hughes, Hubbard and Reid, Nathaniel H. Speights, Iverson O. Mitchell, III, Speights & Micheel, Washington, D.C., for defendants.

## MEMORANDUM AND ORDER

JACKSON, District Judge.

This case is presently before the Court on the pretrial motion of the defendant Federal Deposit Insurance Corporation (hereinafter "FDIC/Receiver"), as receiver of a defunct lending institution ("Vernon"), to appoint a receiver of plaintiffs' California commercial real estate (the "Property") pending the foreclosure of a mortgage to which the FDIC has succeeded. The motion is opposed by the mortgagors (the plaintiffs here), Brill & Harrington Invest-

ments ("B & H") and a successor, Brandin Court Partners ("BCP").

The underlying dispute arises under a February, 1984, loan transaction in which Vernon agreed to lend B & H up to $5,525,-000 for the latter's acquisition of the Property, and the construction thereon of a high-technology business park. B & H executed a loan agreement, a promissory note, and the deed of trust by which the Property is encumbered. The loan documents, by their terms, are to be governed and construed in accordance with "the laws of the State of California and with the laws of the United States applicable to transactions within California." Loan Agreement § 6.10.

The transaction provided for a future "Mini–Perm Loan" of $5,525,000, to become effective at the end of the "original term" of the loan, by which B & H would refinance the outstanding balance of the acquisition/construction loan at a reduced interest rate.[1] The Mini–Perm Loan commitment was conditional: Vernon was obligated to make the loan only if the total amount loaned did not exceed 80 percent of the appraised value of the Property.

Vernon made the initial loan in 1984, and B & H developed the Property. In 1985 B & H, and Brill and Harrington in their individual capacities, formed BCP, to which all interest in the Property was assigned.

Subsequently, under circumstances predictably in dispute, the venture encountered financial difficulties. Despite the provisions of the loan agreement requiring the mortgagors to make monthly interest payments, there is evidence that Vernon may have agreed to a modification calling for repayment of the principal amount, plus all accrued interest, in one lump sum at the end of the "original term." Nothing has, however, been repaid to date, of either principal or interest.

The mortgagors contend that Vernon failed to provide the refinancing via the Mini–Perm Loan at the appropriate time, and thereby breached the loan agreement,

1. The parties do not appear in the pleadings to agree on the date the Mini–Perm Loan was to take effect. See Complaint, para. 16, and cf. Answer and Counterclaim, at para. 85.

thus relieving them of their obligation to have repaid the loan. The loan is not, they say, technically in "default," a circumstance necessary to abrogate their continuing right, as owners, to collect rents and profits, and otherwise use the Property as they will.[2]

FDIC/Receiver responds that since the value of the Property had dropped sufficiently to cause the loan/value ratio to exceed 80 percent, Vernon was not required to provide further financing in the form of the Mini–Perm Loan. Moreover, it argues, with or without such a loan plaintiffs subsequently defaulted on their continuing obligation to make repayments under the initial loan terms.[3]

Plaintiffs filed the instant lawsuit following their receipt, in August or September of 1991, of the FDIC/Receiver's notice of default and election to sell under the deed of trust. The plaintiffs' complaint (against Vernon and the FDIC as its successor) states counts alleging breach of contract; fraud; negligent misrepresentation; breach of fiduciary duty; intentional interference with economic benefits; and breach of an implied covenant of good faith and fair dealing.

The FDIC/Receiver subsequently filed an answer and counterclaim, as well as a motion to join, as additional counterclaim defendants, Messrs. Brill, Harrington, and another, in their individual capacities. (Brill and Harrington are general partners of both B & H and BCP.) FDIC/Receiver, as counterclaimant, seeks, *inter alia*, a foreclosure of the deed of trust, and a deficiency judgment; an accounting; and the imposition of a constructive trust on the Property. It also moved for the appointment of a receiver *pendente lite* to take possession of the Property for the

purpose of preserving and controlling it, and for collecting the income it generates, together with a prayer for preliminary injunctive relief as being necessary to prevent the plaintiffs/counterclaim defendants from "interfering" with the receiver's activities.[4]

FDIC/Receiver has nominated one Susan Uecker as receiver for the Property. On the basis of her declaration, it appears that Ms. Uecker is qualified for the office, having served as a receiver for several other properties in California and, in particular, in the Silicon Valley area where the subject Property is located. Plaintiffs oppose the appointment of a receiver principally on the ground that such an appointment exceeds this Court's power to grant relief. They assert that a receivership is an *in rem* remedy and that the so-called "local action doctrine" precludes a court from exercising *in rem* jurisdiction over real property located outside its judicial district or territorial jurisdictional limits.

 The Circuit Court of Appeals for this Circuit has stated, however, in reversing, *en banc*, the dismissal of a complaint for an injunction respecting defendants' alleged trespasses upon plaintiffs' land in Honduras, that,

[c]ourts often properly issue equitable decrees involving property outside the jurisdiction of the court. Where, as here, the court adjudicating the controversy has personal jurisdiction over the [parties], the extraterritorial nature of the property involved in the litigation is no bar to equitable relief [citing *Phelps v. McDonald*, 99 U.S. (9 Otto) 298, 25 L.Ed. 473 (1879)].... The local action rule of common law ... has no bearing on this case.

---

**2.** *See* Deed of Trust, Section 3.03, which provides that "[s]o long as there shall exist no Event of Default, [plaintiffs] shall have the right to collect ... all rents, issues and profits from the Mortgaged Property and to retain, use and enjoy the same...."

**3.** Even if plaintiffs are ultimately able to prove that Vernon breached the loan agreement, and that the breach affects plaintiffs' liability, the Court observes that such a breach might affect

the extent, but certainly not the existence, of plaintiffs' indebtedness.

**4.** On January 23, 1992, the parties presented the Court with a stipulated temporary restraining order ("TRO"), effective until the disposition of the instant motion. The TRO provides, essentially, for certain narrow purposes for which funds may be disbursed from the rents collected on the Property, and for the immediate discontinuation of certain salary payments.

*Ramirez de Arellano v. Weinberger,* 745 F.2d 1500, 1529 (D.C.Cir.1984), *vacated on other grounds,* 471 U.S. 1113, 105 S.Ct. 2353, 86 L.Ed.2d 255 (1985).[5] In the instant case, this Court has both *in personam* and subject matter jurisdiction over the parties and this controversy, 12 U.S.C. § 1819(b)(2)(A), and venue is proper here. 12 U.S.C. § 1821(d)(6)(A).

Moreover, any order or decree appointing a receiver here, or in furtherance of the receivership, is, in the circumstances of this case, essentially *in personam* relief, in the nature of an equitable decree of specific performance. The loan transaction itself expressly contemplates the appointment of a receiver of the Property upon the application of the mortgagee "as a matter of strict right" upon or after commencement of foreclosure, to which the mortgagors have "irrevocably consent[ed]." Deed of Trust, § 8.05.

However, even were this case regarded as a classic action *in rem,* it is clear that any common law "local action doctrine" is overridden by the enactment of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989, Pub.L. 101–73, 103 Stat. 183, *et seq.* ("FIRREA"). Congress has, as it is spoken of colloquially, "federalized" all litigation to which FDIC as receiver is a party, has laid venue for many such proceedings in this district, and has conferred extensive powers upon the FDIC to preserve and conserve the assets and property of depository institutions in its receivership. 12 U.S.C. § 1821(d). To deny the FDIC access to the venerable equitable device of a receivership of assets and property in its nominal custody, but vulnerable to dissipation, would impair the FDIC's own ability, as a fiduciary, to accomplish its statutory mission to marshall and liquidate the remains of failed banks and thrifts. And, were it ever in doubt, it is now definitively established that, absent clear direction to the contrary by Congress, federal courts have the power to award any appropriate relief in a cognizable cause of action brought pursuant to a federal statute. *Franklin v. Gwinnett County Public Schools,* —— U.S. ——, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992) citing, *inter alia, J.I. Case Co. v. Borak,* 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964) (actionable violations of Securities Exchange Act of 1934 subject to any appropriate form of judicial remedy). Consequently, the question is not if the Court can appoint a receiver, but whether it should.

■ Fed.R.Civ.P. 66 provides for the appointment of a receiver "in accordance with the practice heretofore followed in the courts of the United States...." Creditors with a security interest in real property have a well-established interest in the property sufficient to support the appointment of a receiver. *See* 12 C. Wright & A. Miller, *Federal Practice and Procedure* § 2983 (1973); *see also View Crest Garden Apartments v. United States,* 281 F.2d 844 (9th Cir.1960), *cert. denied,* 364 U.S. 902, 81 S.Ct. 235, 5 L.Ed.2d 195 (1960). And federal courts typically consider, *inter alia,* the following factors when determining the propriety of appointing a receiver under Rule 66:

i) inadequacy of the security to satisfy the debt;

ii) financial position of the debtor;

iii) fraudulent conduct on defendant's part;

iv) inadequacy of legal remedies;

v) imminent danger of the property being lost, concealed, injured, diminished in value, or squandered;

vi) probability that harm to moving party by denial of appointment would outweigh injury to parties opposing appointment;

vii) probability of moving party's success in the action and the possibility of irreparable injury to its interest in the property; and

---

**5.** The only local authority cited to the contrary is an unpublished two-page decision of another judge of this district court declining, *as a matter of discretion,* to appoint a receiver of foreign real estate in circumstances undisclosed by the opinion. *Hafstad v. Hornick,* 1987 WL 9246 (D.D.C.).

viii) whether moving party's interests sought to be protected will in fact be well-served by receivership.

*See, e.g., New York Life Ins. Co. v. Watt West Invest. Corp.*, 755 F.Supp. 287, 292 (E.D.Cal.1991).[6]

FDIC/Receiver asserts that recent appraisals value the Property at approximately $2,945,000, whereas the mortgage debt now stands in excess of $4,881,700 in principal and $3,000,000 in interest. The mortgagors dispute this valuation, yet offer no probative evidence to the contrary. Consequently, the Court finds it likely that the security is inadequate to satisfy the debt.

The debtors' financial condition, if not precarious, is at least suspect. They have made no payments whatsoever on the debt, offer none now (or any additional security), and have tendered only a declaration to the effect that they are at the moment "solvent," whatever that means. The Court thus also finds it likely that they are in no financial position to give assurance that they are now and will remain fully able to repay the amounts owed.

Although the present record will not support a finding that the mortgagors have unlawfully or improperly diverted funds generated by the Property, the Court will infer the imminent danger of loss from the admitted fact that none of the loan has ever been repaid; debt service is always a priority expense item for prudent managers of encumbered income-producing property. Thus, the Court concludes, after considering the factors relevant here, that the appointment of a receiver under the federal common law is clearly authorized and appropriate.[7]

Plaintiffs urge that, in the event this Court determines to appoint a receiver, the scope of her receivership be limited to the control of rents received henceforth, and should in no way attach to any sums in accounts attributable to earlier Property earnings. The Court agrees that the receivership should be so limited. FDIC/Receiver has expressly requested only a receiver for the subject Property, not specifically for the assets of B & H and BCP, which any such accounts presumably are, and the present record is altogether inadequate to allow any such accounts to be identified with accuracy and described with the precision appropriate to a receivership order.

The FDIC/Receiver asks, in addition, for injunctive relief that would prohibit plaintiffs' "interference" with the receiver, if appointed. Three factors, in contrast to the familiar four, must be considered in assessing the propriety of such a preliminary injunction: the requesting party's substantial likelihood of prevailing on the merits; the possibility of substantial harm to other interested parties from injunctive relief; and the interests of the public. Congress eliminated, by statute, the usual requirement of a showing of irreparable harm in the absence of relief when the FDIC is the applicant. 12 U.S.C. § 1821(d)(19).[8]

First, the likelihood of the FDIC's prevailing on the merits is well nigh a certainty; sooner or later the loan must be repaid. Second, there is little likelihood of significant injury to other interested parties. The receiver will be fully accountable to them all and to the Court. A "non-interference

**6.** The Court rejects the plaintiffs' contention that there is a substantive split in the Circuits about the standards to apply, and reads the *New York Life* standards as compatible with the D.C. Circuit case law that has been brought to its attention.

**7.** The Court observes that, under California law, a court may appoint a receiver:

[i]n an action by a secured lender for the foreclosure of the deed of trust or mortgage and sale of the property upon which there is a lien under a deed of trust or mortgage, where it appears that the property is in danger of

being lost, removed, or materially injured, or that the condition of the deed of trust or mortgage has not been performed, and that the property is probably insufficient to discharge the deed of trust or mortgage debt. Cal.Civ.Proc.Code § 564(b)(2) (West Supp.1992). This standard is similar to, and certainly no more rigorous than, that of federal common law.

**8.** Added to the Federal Deposit Insurance Act, as amended by FIRREA, by section 2521(a) of the Crime Control Act of 1990, Pub.L. No. 101–647, 104 Stat. 4789, 4863.

order" merely complements, and makes explicit, that which is implicit in the judicial act of appointment itself, namely, that the Court retains jurisdiction, and will always act to implement, and to protect the integrity of, the receivership and the *res*. Third, the Court finds it clearly in the public interest to prevent interference with a receiver appointed under FIRREA who, in the larger perspective, is assisting the government in attempting to salvage what it can, and thus to mitigate, the public harm stemming from the past excesses of the lending industries. To the extent that plaintiffs in this case do not repay the money lent to them, taxpayers nationally must cover the shortfall. Thus the Court has no difficulty in concluding, when balancing this public interest against that of plaintiffs, who have had unhindered use of someone else's money without cost for nearly a decade, that the former predominates. Thus, all three factors are satisfied, and an appropriate injunction will issue.

For the foregoing reasons, therefore, it is, this 5th day of March, 1992,

ORDERED, that the motion of FDIC/Receiver for appointment of a receiver of the subject Property is granted, and Susan Uecker is appointed Receiver of that real property, together with improvements thereon (hereinafter the "Property"), known as 5005–55 Brandin Court, and described as

> Those parcels of land in the City of Fremont, County of Alameda, State of California, described as Lots 6 and 7, Map of Tract 4597, filed February 27, 1981, Map Book 126, page 24, Alameda County Records

pending further order of Court; and it is

FURTHER ORDERED, that the Receiver shall take possession of, and hold and manage the Property for the benefit of, all parties as their interests therein may hereafter appear; that she shall collect the rents and profits therefrom; shall pay all ordinary and necessary expenses incurred in connection herewith; and that she shall account for the same as the Court may hereafter require; and it is

FURTHER ORDERED, that the Receiver shall, in the execution of the Receivership aforesaid, possess and exercise all powers, and perform all duties, as are possessed, exercised, and performed by receivers appointed by federal courts generally in like cases; and it is

FURTHER ORDERED, that Brill & Harrington Investments, Inc.; Brandin Court Partners; J. Marty Brill, Jr.; and John B. Harrington; Michael E. Tamas; their officers, agents, servants, employees, attorneys, and all other persons in active concert or participation with them, are hereby enjoined to do all acts and execute all instruments necessary to give effect hereto, and to refrain now and hereafter from any act or deed which would hinder or impede the Receiver in her execution of this Receivership, except with prior leave of Court; and it is

FURTHER ORDERED, that the Receiver and the parties hereto may apply for enforcement, or for amendment or modification, of this Order at any time by motion, upon notice to all other parties, until the Receivership is vacated or terminated, or this case is concluded.