FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| CANADA LIFE ASSURANCE CO.,<br>*Plaintiff-Appellee,*<br><br>v.<br><br>ALFRED R. LAPETER; SHARON R.<br>LAPETER; LAPETER 1985 LIVING<br>TRUST,<br>*Defendants-Appellants.* | No. 07-35683<br><br>D.C. No.<br>CV-07-00254-BLW<br><br>ORDER<br>AMENDING<br>OPINION AND<br>DENYING<br>PETITION FOR<br>REHEARING AND<br>AMENDED<br>OPINION |

Appeal from the United States District Court
for the District of Idaho
B. Lynn Winmill, District Judge, Presiding

Submitted December 11, 2008*
Seattle, Washington

Filed March 4, 2009
Amended April 8, 2009

Before: Ronald M. Gould, Richard C. Tallman and
Consuelo M. Callahan, Circuit Judges.

Opinion by Judge Callahan

---

*The panel unanimously finds this case suitable for decision without
oral argument. *See* Fed. R. App. P. 34(a)(2).

4133

**COUNSEL**

B. Newal Squyres, Robert A. Faucher, and Kevin C. Braley, Holland & Hart, LLP, on behalf of plaintiff-appellee Canada Life Assurance Co.

Emil R. Berg, Greener Burke Shoemaker P.A., on behalf of defendants-appellants Alfred R. LaPeter and Sharon R. LaPeter as Trustees for the LaPeter 1985 Living Trust.

---

**ORDER**

The opinion filed March 4, 2009, and published at __ F.3d __, 2009 WL 530935, is AMENDED as follows.

1. At Slip Op. 2717, in the second sentence of the second full paragraph, delete "May 21, 2007," and replace with "the date of LaPeter's default".

2. At Slip Op. 2726, delete footnote 16 in its entirety, and renumber the remaining footnotes in sequential order.

3. At Slip Op. 2726, after the first full sentence following the subheading "Turnover of Past Rents," insert the following sentences: "The district court found that LaPeter had failed to make payments to Canada Life since June 2006 and that '[p]ursuant to the promissory note and deed of trust, the indebtedness [was] due and owing.' It then held that Canada Life had 'the right to collect and receive all of the rents . . . now due or which may become due.' " Following these sentences, begin a new paragraph with the sentence that begins: "In district court, La Peter . . . ."

4. At Slip Op. 2728, modify the last sentence before the subheading "Attorneys' Fees" as follows: "We therefore affirm the appointment order in its entirety, including the

provision requiring LaPeter to disgorge rents he held in a segregated account dating back to June 1, 2006."

With these amendments, the panel has voted to deny the petition for panel rehearing, and the petition for rehearing is hereby DENIED. No subsequent Petitions for Rehearing shall be permitted in No. 07-35683.

SO ORDERED.

## OPINION

CALLAHAN, Circuit Judge:

Alfred R. LaPeter and Sharon R. LaPeter, as trustees for the LaPeter 1985 Living Trust (referred to collectively as "LaPeter"), appeal the district court's order appointing a receiver to manage the ParkCenter Mall in Boise, Idaho (the "Mall").[1] We have jurisdiction under 28 U.S.C. § 1292(a)(2), and we affirm.

## I.

In 1996, LaPeter purchased the Mall for $9.6 million, made a $2.4 million down payment, and financed the rest through a promissory note (the "loan") issued by Crown Life Insurance Company ("Crown Life"). The loan was secured by a Deed of Trust, Security Agreement and Fixture Filing ("Deed of Trust") and an "Assignment of Leases and Cash Collateral."

---

[1]The trust itself is the party to the loan at issue in this case, but not a party to the appeal. We refer to appellants collectively as "LaPeter" because the record relates only Alfred LaPeter's involvement in the events giving rise to this action.

In 1999, Crown Life assigned the loan to Canada Life Assurance Company ("Canada Life"). In early 2005, LaPeter began negotiating with Canada Life to refinance the loan at a lower interest rate. The loan was set to mature in September 2006, at which time a balloon payment on the remaining principal was due, and the leases of important Mall tenants — Key Bank and Talbots — were set to expire around the same time. During the refinancing negotiations, LaPeter made various representations to Canada Life about the Mall's current and projected lease income. On June 21, 2005, Canada Life agreed to refinance the loan at a lower interest rate based, in part, on LaPeter's representations that KeyBank would only renew its lease for reduced rent and that Talbots would not renew its lease at all. Three days later, LaPeter entered into a new lease agreement with Key Bank, which resulted in a significant increase in rental payments to LaPeter. LaPeter did not disclose this modification to Canada Life. Furthermore, LaPeter failed to inform Canada Life that Talbots decided to extend its lease for two years.

Canada Life learned of the Talbots and Key Bank modifications between October 1 and November 3, 2005, and cancelled its refinancing commitment on November 16, 2005.[2] Following Canada Life's cancellation, LaPeter was unable to obtain alternative financing, and defaulted on the loan. He made a monthly loan payment on June 10, 2006, in the amount of $59,000, but failed to make the July and August payments. He also missed the balloon payment on September 10, 2006, and failed to pay over $100,000 in property taxes that were due in December 2006 and June 2007. The failure

---

[2]LaPeter filed suit against Canada Life in March 2006, alleging wrongful termination of the refinancing commitment. Canada Life removed the case to district court, where it prevailed on summary judgment on August 3, 2007. We affirmed that judgment in a memorandum disposition on January 5, 2009, concluding that Canada Life had "reasonable justification" to terminate its refinancing commitment in light of LaPeter's misrepresentations about the economics of the leases. *See LaPeter, et al. v. Canada Life Ins. Co.*, No. 07-35668, 2009 WL 20960 (9th Cir. Jan. 5, 2009).

to pay taxes resulted in late charges and penalty interest. During this time, LaPeter continued to collect rents from the Mall's tenants and deposited those proceeds, minus operating expenses, in a segregated account.

The missed payments and failure to pay property taxes constituted defaults under the terms of the loan. Pursuant to the terms of the Deed of Trust and the Assignment of Leases and Cash Collateral, these defaults entitled Canada Life to take possession of and manage the Mall, collect its rents, and apply for the appointment of a receiver.

On March 26, 2007, Canada Life took steps to foreclose on the Deed of Trust by filing a notice of default and a notice of trustee's sale.[3] Days later, it filed an action in state court seeking to appoint a receiver pursuant to Idaho Code § 8-601A in order to assume possession, management, and control of the Mall.[4] Its motion to appoint a receiver included a request that LaPeter be ordered to turn over to the receiver any rents collected from the date of the motion onward. LaPeter removed the case to federal court on the basis of diversity jurisdiction, and the district court held an evidentiary hearing on July 10, 2007. In connection with the hearing, Canada Life submitted an appraisal reflecting the Mall's capitalized value of $7,140,000. Brian Schwartz, Canada Life's commercial mortgage manager in charge of the refinancing negotiations, testified that this figure should be adjusted downward because the

---

[3]In a separate action, LaPeter unsuccessfully sought to enjoin that sale. While the present appeal was pending, he filed an appeal from the denial of the injunction, which he ultimately dismissed. *See LaPeter, et al. v. Canada Life Assurance Co.,* No. 07-35873. Despite the dismissal, Canada Life delayed the trustee's sale pending resolution of the other appeals.

[4]Pursuant to Idaho Code § 8-601A, a receiver may be appointed where the real property that is the subject of the deed of trust is "in danger of substantial waste or . . . the income therefrom is in danger of being lost, or . . . the property is or may become insufficient to discharge the debt which it secures."

leases had come closer to expiration in the year and a half since the appraisal was made.[5]

Although Schwartz testified that he did not "know the exact value of the mall today," he opined that it would be insufficient to discharge the debt. He testified that LaPeter currently owed Canada Life $7,310,605, an estimate based on the principal balance of $5,966,541, plus contractual interest, default interest, late charges, attorneys' and trustee's fees, and unpaid taxes. LaPeter offered no formal appraisal to contradict these estimates, and conceded in briefing on appeal the existence of a "small shortfall." At the evidentiary hearing, LaPeter simply testified that he "believe[d], based on the future potential," that the Mall was worth $12 million, and that it would be "filled up or released in the next three to four years," although he also admitted that the "demand for office or retail space is not very high currently."

By order dated July 12, 2007, the district court appointed a receiver. That order specified the receiver's duties and obligations, and ordered LaPeter to turn over any rents collected from the date of LaPeter's default onward ("past rents"). The district court did not indicate whether it was applying state or federal law in making the appointment, but its findings tracked the Idaho statute.[6] Specifically, the court found that the appointment was necessary because the Mall "and the rents associated therewith, constituting the collateral" were "in danger of substantial waste and risk of loss because income from the [Mall was] being diverted and not applied to servicing the debt encumbering the [Mall] and the real estate taxes on [it]." The district court also found that the Mall "is or may become insufficient to discharge the debt which it secures."

---

[5]Schwartz works for Great-West Life & Annuity Company, a sister organization of Canada Life.

[6]As discussed *infra*, the appointment of a receiver under federal law hinges on factors similar to those specified in the Idaho statute.

LaPeter timely appealed the appointment of the receiver, challenging the district court's apparent application of state law, and the portion of the order requiring LaPeter to relinquish the past rents. Both parties requested attorneys' fees on appeal.

## II.

### A.  Jurisdiction

We have jurisdiction to review an appeal from an order appointing a receiver pursuant to 28 U.S.C. § 1292(a)(2). Section 1292(a)(2) vests this court with jurisdiction over "[i]nterlocutory orders appointing receivers, or refusing orders to wind up receiverships or to take steps to accomplish the purposes thereof, such as directing sales or other disposals of property." We have adopted "a policy of strict construction that has confined appeals to the three categories clearly specified in the statute." *FTC v. Overseas Unlimited Agency, Inc.*, 873 F.2d 1233, 1235 (9th Cir. 1989) (citations and quotations omitted). Here, the order appointing the receiver clearly falls within the first category and therefore is properly before the court. However, the parties dispute whether the portion of the order requiring LaPeter to turn over past rents is appealable under § 1292(a)(2).

**[1]** We have previously held that orders requiring funds to be turned over to a receiver are nonappealable under § 1292(a)(2). *Overseas Unlimited Agency, Inc.*, 873 F.2d at 1235. However, in *Overseas*, the "turnover order" at issue was not included in the order appointing the receiver, as it is here. *Id.* at 1234; *see also SEC v. Am. Principals Holdings, Inc.*, 817 F.2d 1349, 1351 (9th Cir. 1987) (separate turnover order not appealable under § 1292(a)(2)); *United States v. Chelsea Towers, Inc.*, 404 F.2d 329, 330 (3d Cir. 1968) (separate order requiring the delivery of certain deposits to the receiver not appealable); *but see CFTC v. Topworth Int'l, Ltd.*, 205 F.3d 1107, 1112 (9th Cir. 1999) (holding that a sep-

arate order requiring funds to be turned over to a receiver was appealable under 28 U.S.C. § 1291, because it finally determined the appellant's rights in the disputed receivership assets).[7]

[2] The parties do not point to, and we can find no, cases addressing the appealability of a turnover order that is included in the order appointing a receiver. The unique posture of the turnover order in this case distinguishes it from the discrete orders at issue in *Overseas* and *American Principals Holdings*. Based on this distinction, we conclude that because we have jurisdiction pursuant to § 1292(a)(2) to review the appointment order, we may review provisions of that order which would not by themselves be immediately reviewable.[8]

### B.  Law Governing Appointment of a Receiver in Diversity Action

Next, we consider whether state or federal law governs the appointment of a receiver in a diversity action such as this one. We conclude that federal law governs, and that appointment orders are reviewed for abuse of discretion.

#### 1.  *Federal Law Governs*

[3] We have never squarely addressed the issue of whether federal or state law governs the appointment of a receiver by

---

[7]The panel in *Topworth* does not appear to have considered the applicability of 28 U.S.C. § 1292(a)(2), given its determination that the district court had issued a final order and not an interlocutory order. Here, LaPeter premised the appeal on § 1292(a)(2), given the parties' litigation of ongoing, related disputes regarding the refinancing agreement and the trustee's sale.

[8]We recognize that other cases may arise where adjudication of a turnover order like the one in this case may not be appropriate for interlocutory review, for example, where there are additional outstanding issues with respect to the receivership. In this case, further litigation with respect to the receivership is unlikely, as there are only two parties involved with the receivership and LaPeter's related appeals have been resolved.

a district court where federal jurisdiction is based on diversity. Those circuits that have considered the issue have held that federal law governs. *Nat'l P'ship Inv. Corp. v. Nat'l Hous. Dev. Corp.*, 153 F.3d 1289, 1291-92 (11th Cir. 1998) (federal law governs appointment of a receiver in diversity case); *Aviation Supply Corp. v. R.S.B.I. Aerospace, Inc.*, 999 F.2d 314, 316 (8th Cir. 1993) (same).[9]

In *National Partnership*, the Eleventh Circuit concluded that Federal Rule of Civil Procedure 66 "assert[ed] the primacy of federal law in the practice of federal receiverships." 153 F.3d at 1291. Rule 66 provides:

> These rules govern an action in which the appointment of a receiver is sought or a receiver sues or is sued. But the *practice in administering an estate by a receiver* or a similar court-appointed officer *must accord with the historical practice in federal courts* or with a local rule.

Fed. R. Civ. P. 66 (emphasis added).

**[4]** Not only does Rule 66 require application of the federal rules in an action where the appointment of a receiver is sought, it specifically indicates a normative standard for uniform administration of receiverships in accordance "with the historical practice in federal courts." *Id.*; *see also* 12 Wright, Miller & Marcus ("Wright, Miller & Marcus"), *Federal Practice and Procedure* § 2983, at 33-35 (2d ed. 1997).

**[5]** The primacy of the federal rules in diversity actions is well-settled. *See Hanna v. Plumer*, 380 U.S. 460, 471 (1965)

---

[9]Other courts have applied federal law in diversity cases without much discussion. *See, e.g., Chase Manhattan Bank, N.A. v. Turabo Shopping Ctr., Inc.*, 683 F.2d 25, 26 (1st Cir. 1982); *Bookout v. Atlas Fin. Corp.*, 395 F. Supp. 1338, 1339 (N.D. Ga. 1974) *aff'd per curiam sub nom. Bookout v. First Nat'l Mortgage & Disc. Co.*, 514 F.2d 757 (5th Cir. 1975).

("When a situation is covered by one of the Federal Rules, the question facing the court is a far cry from the typical, relatively unguided *Erie* choice: the court has been instructed to apply the Federal Rule, and can refuse to do so only if the Advisory Committee, this Court, and Congress erred in their prima facie judgment that the Rule in question transgresses neither the terms of the Enabling Act nor constitutional restrictions."). Indeed, as the Eleventh Circuit reasoned in *National Partnership*, "to the extent Rule 66 dictates what principles should be applied to federal receiverships, courts must comply with the Rule even in the face of differing state law." 153 F.3d at 1291 (citing *Hanna*, 380 U.S. at 471).

The dispute here hinges on LaPeter's contention that federal law differs greatly from Idaho law, and that federal law would not permit the appointment of a receiver in this case. We disagree that the two bodies of law differ so substantially.[10] Even if they did, any divergences between the two bodies of law would not implicate the *Erie* doctrine, as Canada Life suggests, "because the appointment of a receiver does not directly affect the outcome of the [underlying] action."[11] *New York Life Ins. Co. v. Watt West Inv. Corp.*, 755 F. Supp. 287, 291 (E.D. Cal. 1991) (citing *Pusey & Jones Co. v. Hanssen*, 261 U.S. 491, 497 (1923)); *see also Hanna*, 380 U.S. at 465-66 (eschewing "traditional or common-sense substance-procedure distinction[s]" and holding that the proper inquiry under *Erie* is whether a state rule "significantly affect[s] the result of a litigation"). As the Eleventh Circuit noted, the "appointment of a receiver in equity is not a substantive right; rather, it is an ancillary remedy which does not affect the ulti-

---

[10]Although the state statute relied on by Canada Life is specific to the appointment of a receiver in cases involving defaults under a deed of trust, it nonetheless requires the court to consider whether certain factors are present. Those factors — the danger of substantial waste, and the insufficient value of the property to discharge the debt — are similar to factors considered under federal law. *See infra.*

[11]*See Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938).

mate outcome of the action." *Nat'l P'ship Inv. Corp.*, 153 F.3d at 1291 (citing *Pusey*, 261 U.S. at 497). In this case, the receivership has allowed Canada Life to manage the Mall pending resolution of the parties' litigation of their rights and obligations with regard to the refinancing agreement and Canada Life's ability to proceed with the trustee's sale. The receivership action is tangential to those disputes.

**[6]** Finally, although a state statute may provide a vehicle for the appointment of a receiver, such a statute does not change the nature of the federal courts' equitable powers. Indeed, a federal court sitting in diversity may exercise equitable powers independent of state law. *See* 12 Wright, Miller & Marcus § 2983 (citing *Guaranty Trust Co. of New York v. York*, 326 U.S. 99 (1945), which affirmed the independent vitality of federal equitable powers). In *York*, the Court acknowledged that a federal court sitting in equity is not constrained by what remedies are available under state law. 326 U.S. at 105. Thus, regardless of whether state law provides a vehicle by which to appoint a receiver, the federal courts are free to provide that remedy solely by virtue of their equitable powers. Based on the foregoing, we join the Eleventh and Eighth Circuits in holding that federal law governs the issue of whether to appoint a receiver in a diversity action.[12]

---

[12]To the extent we have previously applied state law, we did so without deciding whether state or federal law controlled. Thus, those decisions are not controlling. *Estate of Bishop v. Bechtel Power Corp.*, 905 F.2d 1272, 1275-76 (9th Cir. 1990) (court not bound by prior cases in which the question was assumed without decision). *See, e.g., Pioche Mines Consol., Inc. v. Dolman*, 333 F.2d 257, 273 (9th Cir. 1964) (commenting that state law probably applied, but explicitly declining to decide the issue because appointment of a receiver was inappropriate under both state and federal law); *Prudential Ins. Co. of Am. v. Fifty Associates*, 503 F.2d 925, 930 (9th Cir. 1974) (assuming without discussion that state law governed appointment of a receiver where parties did not dispute that issue).

### 2. *Standard of Review*

Although it appears that we have never explicitly articulated the standard for reviewing a district court order appointing a receiver, we have consistently applied an abuse of discretion standard. *See SEC v. Wallenbrock*, 313 F.3d 532, 536 (9th Cir. 2002) (applying abuse of discretion standard where defendant challenged the district court's injunction and appointment of receiver); *SEC v. Hardy*, 803 F.2d 1034, 1041 (9th Cir. 1986) (Reinhardt, J., concurring and dissenting) ("power inherent in the district court to create a receivership . . . is an equitable one" that should not be overturned "absent compelling justification demonstrating abuse of discretion"); *View Crest Garden Apartments, Inc. v. United States* ("*View Crest*"), 281 F.2d 844, 849 (9th Cir. 1960) (court acted well within its broad discretionary powers in appointing a receiver).

This is in accord with other federal authorities. *See, e.g., Nat'l P'ship Inv. Corp.*, 153 F.3d at 1292 ("[A] court of appeals should review a district court's decision to appoint a receiver for an abuse of discretion."); *Aviation Supply Corp.*, 999 F.2d at 317 ("We review the decision to appoint a receiver for abuse of discretion."); *Lyman v. Spain*, 774 F.2d 495, 497 (D.C. Cir. 1985) ("Abuse of discretion is the standard of review.").[13] Accordingly, we affirm that abuse of discretion is the appropriate standard by which to review a district court's order appointing a receiver.

### 3. *Application*

Under federal law, appointing a "receiver is an extraordinary equitable remedy," which should be applied with cau-

---

[13]Leading commentators agree that this is the appropriate standard of review. *See* 13 James Wm. Moore, et al., *Moore's Federal Practice* ("Moore's"), § 66.07[3] (3d ed. 2008); 12 Wright, Miller & Marcus § 2983, at 30.

tion. *Aviation Supply Corp.*, 999 F.2d at 316; 12 Wright, Miller & Marcus § 2983, at 24. However, there is "no precise formula for determining when a receiver may be appointed." *Aviation Supply Corp.*, 999 F.2d at 316. Rather, federal courts consider a variety of factors in making this determination, including, for example: (1) "whether [the party] seeking the appointment has a valid claim"; (2) "whether there is fraudulent conduct or the probability of fraudulent conduct," by the defendant; (3) whether the property is in imminent danger of "being lost, concealed, injured, diminished in value, or squandered"; (4) whether legal remedies are inadequate; (5) whether the harm to plaintiff by denial of the appointment would outweigh injury to the party opposing appointment; (6) "the plaintiff's probable success in the action and the possibility of irreparable injury to plaintiff's interest in the property"; and, (7) "whether [the] plaintiff's interests sought to be protected will in fact be well-served by receivership." Moore's, § 66.04[2][b]; *New York Life Ins. Co.*, 755 F. Supp. at 292 (citing 12 Wright, Miller & Marcus § 2983).

We have previously applied similar factors, foremost among them being whether the property was of insufficient value to insure payment, and whether the defendant was of doubtful financial standing.[14] *See View Crest*, 281 F.2d at 847. While our holding in *View Crest* appears to be limited to actions "brought to foreclose a mortgage insured under Title IX of the National Housing Act," it is nonetheless instructive. *Id.* at 847-48.

There, we indicated that we were adhering to the distinction drawn by the First Circuit in *Garden Homes Inc. v. United States*, 200 F.2d 299 (1st Cir. 1999), between a receiver with the power to collect rents during the pendency of a foreclosure action, and a receiver with the additional power to man-

---

[14]These factors, as well as those listed in the preceding paragraph, are very similar to those listed in the Idaho statute relied on by Canada Life. *See* fn. 4.

age the mortgaged property. *View Crest*, 281 F.2d at 847. We stated that in order to have the added managerial power, the plaintiff must not only show the doubtful financial standing of the defendant and the insufficient value of the property, but also "something more." *Id.* We wrote that "[t]he additional factor may be the danger of waste," delays in foreclosure, or "any circumstance which commends itself to a court of equity as a reason for granting the relief sought." *Id.* at 849.

**[7]** Despite our endorsement of this approach, we also recognized a court's authority to appoint a receiver regardless of these factors, noting that "[e]ven if inadequacy of the security and insolvency of the debtor did not appear, consideration of other circumstances [may] disclose[ ] . . . reasons for appointing . . . a receiver." *Id.* at 848. Thus, in *View Crest*, we appear to have recognized the broad nature of a court's equitable powers in determining whether or not to appoint a receiver, and that there is no precise formula for making this determination. We agree with this perspective and hold that the district court has broad discretion in appointing a receiver, that it may consider a host of relevant factors, and that no one factor is dispositive.

**[8]** Here, the district court's appointment of a receiver was well within its discretion. It determined that the appointment was necessary because the Mall "and the rents associated therewith, constituting the collateral" were "in danger of substantial waste and risk of loss because income from the [Mall was] being diverted and not applied to servicing the debt encumbering the [Mall] and the real estate taxes on [it]." The court also found that the Mall "is or may become insufficient to discharge the debt which it secures." These were appropriate factors to consider, and the district court's findings are supported by the record.

**[9]** Specifically, the court's findings regarding the insufficiency of the collateral to discharge the debt are supported by Schwartz's testimony. He testified that LaPeter owed

$7,310,605, and that the Mall was valued at less than $7,140,000. The district court was entitled to credit the analysis offered by Schwartz, a commercial mortgage manager, over LaPeter's unsupported testimony that he "believed" the Mall was worth "about $12 million." LaPeter fails to point to any evidence in the record indicating that the court's findings are clearly erroneous. Further, additional factors are present. LaPeter contributed to the Mall's devaluation by failing to pay property taxes and penalty interest. Moreover, he concealed material facts about the Key Bank and Talbots leases in his negotiations with Canada Life. Although the court made no finding with respect to LaPeter's financial standing, it was not required to do so, especially in light of the presence of these additional factors. *See View Crest*, 281 F.2d at 848.[15] While the appointment of a receiver is an "extraordinary remedy" under federal law, we conclude that the appointment in this case was supported by the presence of numerous factors appropriately considered under federal law, and was well within the district court's broad discretionary and equitable powers.

## C.   Turnover of Past Rents

LaPeter challenges the receiver's right to rents collected prior to the court's appointment of the receiver. The district court found that LaPeter had failed to make payments to Canada Life since June 2006 and that "[p]ursuant to the promissory note and deed of trust, the indebtedness [was] due and owing." It then held that Canada Life had "the right to collect and receive all of the rents . . . now due or which may become due."

In district court, LaPeter opposed the "rent portion" of Canada Life's motion on grounds that it improperly sought to

---

[15]Incidentally, the Deed of Trust in this case appears to be non-recourse, thus limiting LaPeter's personal liability for the debt, and lessening the relevance of LaPeter's personal financial condition.

"vest title" to the Mall in the receiver "as of the date [of] its motion" rather than the date of the order. In his brief to the district court, LaPeter did not explain how putting these rents in the receiver's hands "vested title" in the receiver. Moreover, LaPeter failed to address the numerous provisions in the Deed of Trust that arguably entitle Canada Life to collect the rents upon default.

On appeal, LaPeter asserts that provisions in the Deed of Trust merely give Canada Life a security interest in the rents, that this interest amounts to no more than a "lien" on the Mall and its collateral, that Idaho is a "lien theory" state, and that the receiver is therefore not entitled to collect rents until certain events occur.[16] However, LaPeter takes inconsistent positions with respect to the so-called triggering event, first arguing that the right to collect rents is triggered when Canada Life "takes enforcement action," and then suggesting that the right commences when Canada Life takes actual possession of the Mall. With respect to the former, LaPeter fails to explain how Canada Life's earlier filed notice of default and notice of trustee's sale do not qualify as "enforcement action." With respect to the latter, LaPeter seems inconsistently to define "actual possession" in terms of both the date of the receivership order and the actual trustee's sale — two distinct events, the latter of which does not appear to have occurred yet. The inconsistency of these arguments render them unpersuasive. Moreover, LaPeter fails to cite any binding Idaho law directing the conclusion that Canada Life is not entitled to the disputed rents.

---

[16]"Lien theory states differ from title theory states in that they treat a mortgage as conveying no title to the mortgagee but as creating only the right to sell the property to satisfy the secured debt in the event of default." *Sovereign Bank v. Schwab,* 414 F.3d 450, 455 n.9 (3d Cir. 2005) (citation and quotation marks omitted). Under the "lien theory" the "mortgagor retains both legal and equitable title unless a valid foreclosure occurs." *See* Black's Law Dictionary 936 (7th ed. 1999). LaPeter argues that this theory controls, even where there are contrary provisions in the Deed of Trust. However, he cites no binding authority to support this assertion.

**[10]** His contract-based arguments are also unavailing. To the extent LaPeter argues that provisions in the Deed of Trust support his entitlement to the past rents, we find that the failure to raise these contract-based arguments in the district court constitutes a waiver of those issues on appeal. *See Campbell v. Burt*, 141 F.3d 927, 931 (9th Cir. 1998). Regardless of whether the district court relied on the numerous provisions in the Deed of Trust apparently allowing Canada Life to collect rents upon default, LaPeter has failed to demonstrate that the "rent portion" of the order was in error. That order appears to have been aimed at preventing further waste, and as such, was a valid exercise of the district court's discretion in administering and supervising the receivership. *See Hardy*, 803 F.2d at 1037 (9th Cir. 1986). We therefore affirm the appointment order in its entirety, including the provision requiring LaPeter to disgorge rents he held in a segregated account dating back to June 1, 2006.

## D.  Attorneys' Fees

This court applies state law in a diversity action to determine whether an award of attorneys' fees is allowed. *Michael-Regan Co. v. Lindell*, 527 F.2d 653, 656 (9th Cir. 1975). Here, Canada Life claims it is entitled to fees under the terms of the Deed of Trust and under Idaho Code § 12-120(3). Because we conclude that Canada Life is a prevailing party entitled to fees under the Deed of Trust, we need not reach the issue of its entitlement to fees under the statute.

**[11]** The Deed of Trust provides for an award of reasonable attorneys' fees to a prevailing party, "[s]hould either party bring suit to enforce this Deed of Trust, . . . including any . . . appeal proceeding." As this appeal concerns the appropriateness of the appointment of a receiver, which is specifically contemplated in the Deed of Trust, it constitutes a "suit to enforce the Deed of Trust." Because we conclude that the appointment of the receiver was proper, Canada Life is the

prevailing party, and is entitled to an award of reasonable fees in connection with this appeal.[17]

### III.

In conclusion, we join the Eighth and Eleventh Circuits in holding that federal law governs the appointment of a receiver where jurisdiction is premised on diversity. We further hold that district courts have broad discretion to consider a number of factors in considering whether or not to appoint a receiver, and that no one factor is dispositive. Applying these standards, we conclude that the district court's order appointing the receiver was not an abuse of discretion, and its order requiring certain rents to be turned over to the receiver was within its broad discretion in administering the receivership. As Canada Life is the prevailing party on appeal, we conclude that it is entitled to attorneys' fees under the terms in the Deed of Trust.

**AFFIRMED.**

---

[17]The determination of an appropriate amount of fees on appeal is referred to the court's special master, Appellate Commissioner Peter L. Shaw, who shall conduct whatever proceedings he deems appropriate, and who shall have authority to enter an order awarding fees. *See* 9th Cir. R. 39-1.9. The order is subject to reconsideration by this panel. *Id.*